# EXHIBIT E

# STANDBY CREDITOR'S AGREEMENT

| Standby Creditor | XXIII Capital LTD. |
|---|---|
| Standby Borrower | HOPLITE ENTERTAINMENT, INC., a California corporation |
| Lender | BAY POINT CAPITAL PARTNERS II, LP, a Delaware limited partnership |

**HOPLITE ENTERTAINMENT, INC., a California corporation** (Standby Borrower) is indebted to XXIII Capital Ltd. ([collectively,] Standby Creditor) as of the date of this Agreement (Standby Loan). To induce BAY POINT CAPITAL PARTNERS II, LP, a Delaware limited partnership (Lender) to make a loan to Standby Borrower (Lender's Loan), Standby Creditor agrees:

1. To accept no further payments on the Standby Loan until Lender's Loan is satisfied.

2. To turn over to Lender payments received by Standby Creditor from Standby Borrower in violation of this Agreement within 15 days of receipt.

3. To take no action to enforce claims against Standby Borrower on the Standby Loan until Lender's Loan is satisfied.

4. To take no action against Standby Borrower's collateral, without written consent from the Lender, until Lender's Loan is satisfied.

5. The existing and hereafter acquired liens and security interests of the Lender in any of Standby Borrower's collateral are and shall be senior, regardless of the time, order, lack or method of perfection, to all existing and hereafter acquired liens and security interests, if any, of the Standby Creditor (or any agent therefor) in such collateral, if any, securing all or any portion of the Standby Loan. The Standby Creditor agrees to sign appropriate documentation required by Lender to confirm such subordination of Standby Lender's security interest in the collateral that secures the Standby Loan to Lender's security interest such collateral.

6. Lender, in its sole discretion, may take any action without affecting this Agreement, including but not limited to the following:

    a. Modify the terms of Lender's Loan.
    b. Grant an extension or removal of Lender's Loan.
    c. Defer payments or enter into a workout agreement on Lender's Loan.
    d. Release or substitute collateral securing Lender's Loan.
    e. Forbear from collecting on existing collateral or requiring additional collateral.
    f. Declare a default on Lender's Loan and notify Standby Creditor to stop accepting payment.
    g. Agree to release, compromise, or settlement of Lender's Loan.

7. This Agreement applies to any successor to the Standby Creditor or assignee of this Agreement or of Standby Creditor's Loan, including any bankruptcy trustee or receiver or grantors or sureties of Standby Creditor's Loan.

8. Additional Loans made by Standby Creditor will be subject to the terms of this Agreement, unless Lender agrees otherwise in writing.

9. Standby Creditor hereby (i) consents to and approves of the making of the Lender's Loan, (ii) agrees the execution, delivery and performance of the loan documents evidencing the Lender's Loan will not constitute a default or an event which, with the giving of notice or the lapse of time, or both, would constitute a default under the loan documents evidencing the Standby Loan, (iii) to the extent that the Standby Loan is cross-defaulted with any other indebtedness of the Standby Borrower, a default or event of default under the Lender's Loan shall not constitute a default or an event of default under the Standby Loan.

10. Upon the execution hereof, (1) all of the Standby Creditor's liens on and other security interests in the Specified Collateral (as defined below) will be automatically terminated and released, (2) the Standby Creditor hereby authorizes the Standby Borrower and its agents to file termination statements and other appropriate releases with respect to each financing statement and other instrument filed to perfect any of the security interests and other liens in favor of the Standby Creditor in any of the Specified Collateral, and (3) Standby Creditor shall execute such other lien release documents and take such other actions as Standby Borrower may reasonably request in order to evidence or otherwise give public notice to such collateral terminations and the Standby Borrower or any of their respective agents are authorized to file such documents; provided, however, that any and all such termination statements, releases and other such documents shall be prepared and recorded at the Standby Borrower's expense. As used herein, "Specified Collateral" shall mean any and all accounts receivable, rights to payment and other rights arising from (i) that certain License Agreement dated June 18, 2020, by and between Hoplite Entertainment, Inc. and Big Media Holdings LLC; (ii) that certain Acquisition Agreement dated March 4, 2020, by and between Ineomeida, Inc., d/b/a Fight Channel World Network and Hoplite, Inc.; and (iii) that certain License Agreement dated July 1, 2020, by and between Hoplite Entertainment, Inc. and Big Screen Media Ventures, LLC.

Dated: 9-28-20

Standby Creditor: XXIII Capital LTD

By: (signature) _____

(name) Stan Lou

2

3

Exhibit A

[See Attached]

## LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement"), dated and effective as of November 18, 2016 ("Effective Date"), is by and between Hoplite Entertainment LLC., ("Borrower"), and XXIII Capital Limited, ("Lender").

### RECITALS

WHEREAS, Borrower is a television production company and is seeking a bridge loan against several signed contracts.

WHEREAS, Lender has funds available and is willing to loan Borrower the funds necessary for the loan.

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, the parties hereto agree as follows:

**I.    TERMS OF LOAN**

**1.1    Loan Amount.** Lender hereby agrees to loan to Borrower a maximum of Three Million Two Hundred thousand Dollars (US$3,200,000.00) on the Effective Date via wire transfer (the "Loan). This Loan shall be used for the production of four (4) separate Television productions as outlined here in. A separate co-production agreement may be entered into on a case by case basis. However, said agreement(s) shall be bound by the terms herein.

       **1.1.1    Penalty.** In the event that the Loan is not paid back on or before the Maturity Date (as defined below), Borrower shall pay to Lender a penalty of Twenty-Five Thousand Dollars (US$25,000.00) per month until the full principal and outstanding interest is paid in full.

       **1.1.2    Interest.** Borrower shall pay a total sum of Twelve Percent (12%), paid upon Full Series Delivery as shown below. Principal payment shall be due by the maturity date.

       **1.1.3    Full Series Delivery Schedule**: Jelly Ballers October of 2018, Far East Feast October 2019, Charged & Disbarred SE01 no later than April of 2020, and Charged & Disbarred SE02 no later than April of 2021.

**1.2    Promissory Note.** Borrower's repayment obligation shall be evidenced by a Promissory Note in the amount of Three Million Two Hundred Thousand Dollars (US$3,200,000.00) (the "Note"). The Note as to the Initial Loan shall be executed contemporaneous with the Effective Date.

**1.3** **Payment; Maturity Date**. The entire principal balance of the Initial Loan shall be due and payable on September 25, 2021 unless otherwise extended by mutual written consent of Borrower and Lender (the "Maturity Date").

**1.4** **Loan Documents**. Contemporaneous with the execution of this Agreement, Borrower shall execute a Note (collectively, the "Loan Documents").

**1.5** **Credit.** Subject to the sole and absolute discretion of a Third Party Buyer, and any and all other applicable approvals and credit policies, the Parties hereto agree as follows regarding Projects credit: (a) Company shall seek to be accorded a production company logo credit on a single card, in first position, which may be animated; (b) Producer shall be entitled to seek to be accorded an "executive producer" credit, on a separate card, following the executive producer credit accorded to Company in each episode in which Producer provides all required or requested services; and (c) Producer shall also be entitled to seek to be accorded, which shall be shared with Company, a "Co-Created By" credit. All foregoing credits shall be sought to be a size of type, duration and prominence at least equal to any other executive producers or producers of the Projects. The Parties shall seek to have all credits included in all paid advertising and publicity concerning the Projects, subject to customary and distributor exclusions or end-user approval.

## II. BORROWER'S REPRESENTATIONS AND COVENANTS

**2.1** **Authorization; No Conflict**. Borrower's execution and delivery of the Loan Document, and performance of the obligations set forth therein, are within Borrower's powers, have been duly authorized by all necessary action, require no governmental, regulatory, or other approval, and do not and will not contravene or conflict with any provision of: (i) any law; (ii) any judgment, decree or order; or (iii) any provision of any agreement binding upon Borrower or upon any property of Borrower.

**2.2** **Validity and Binding Nature**. The Loan Documents are (or, when duly signed and delivered, will be) the legal, valid and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**2.3** **Compliance with Applicable Laws**. Borrower is in compliance with the requirements of all applicable laws, rules, regulations and orders of all governmental authorities (including, without limitation, environmental laws, rules, regulations, and orders) the breach of which would have a material adverse effect on Borrower's business or the value of assets pledged as security hereunder.

**2.4** **Confidentiality**. Borrower agrees to keep this transaction and the subject matter thereof completely confidential at all times during the term of the loan and after the loan is repaid in full.

**2.5** **Covenants**. Until the Loan is repaid in full, Borrower shall:

**2.5.1  Insurance.**  Maintain such insurance: (a) as is required by law; (b) as is necessary to protect the assets and/or materials related to the Programs; and (c) as is customarily maintained by similarly situated companies.

**2.5.2  Taxes and Liabilities.**  Pay and discharge: (a) all taxes, assessments and governmental charges or levies imposed on Borrower or its property; (b) all lawful claims that, if unpaid, might by law become a lien on Borrower's property; and (c) all other payments when due to creditors whose liens on assets pledged as security are senior to Lender's liens.  This shall also mean the filling of a UCC1 upon the mutual execution of this loan agreement.

**2.5.3  Conduct of Business.**  Conduct its business in the usual and customary manner and not make any material change in the nature of the business.

**2.5.4  Adverse Material Change.**  Borrower shall notify Lender in writing of any adverse material change to its business within three (3) business days of occurrence or notice of occurrence of such adverse material change.  If such an adverse material change occurs, Lender has the right, at its sole option, to foreclose on the Note and demand full payment immediately.

## III.  GENERAL PROVISIONS

**3.1**  **Commercial Purposes of Loan**.  By executing this Agreement, Borrower expressly represents and warrants that the sole purpose of the Loan is to obtain capital for business and is for commercial purposes only, as set forth herein.

**3.2**  **Default Provisions**.  The occurrence of one or more of the following events shall constitute an event of default:

**3.2.1**  A breach of any of the warranties, representations, obligations, conditions or terms of this Agreement and/or the Note;

**3.2.2**  The entry of a decree or order by a court having jurisdiction in the premises adjudging Borrower a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Borrower under the federal Bankruptcy Act or any other applicable federal or state law, or appointing a receiver, liquidator, assignee or trustee of Borrower, or any substantial part if its property, or ordering the winding up or liquidation of its affairs; or

**3.2.3**  The institution by Borrower of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to the institution of bankruptcy or insolvency proceedings against it, or the filing by it of a petition or answer or consent seeking reorganization or relief under the federal Bankruptcy Act or any other applicable federal or state law, or the consent by it to the filing of any such petition or to the appointment of a receiver, liquidator, assignee or trustee of the company, or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors or the admission by it in writing of its inability to pay its debts generally as they become due, or the taking of corporate action by Borrower in furtherance of such action.

**3.2.4**  In the event of default as set forth herein, without demand or notice, the entire Loan shall become immediately due and payable, and Lender shall be entitled to enforce the terms of this Agreement by: (a) suing for all past amounts due hereunder; and/or (b) pursuing all other appropriate legal remedies available under this Agreement and/or the Note. Failure to exercise any of these options shall not waive the right to exercise the same in the event of any subsequent default. In the event of such default, the undersigned promises to pay all collection expenses, including reasonable attorneys' fees incurred with or without suit and on appeal.

**3.3**  **Notices**. Any notices permitted or required under this Agreement shall be made by personal delivery, electronic mail, or registered mail, return receipt requested, and deemed given upon the date of personal delivery or acceptance, addressed as follows:

| | |
|---|---|
| If to Borrower: | Hoplite Entertainment Inc.<br>Attn: Jonathan Smith<br>6725 Sunset Blvd., Suite 250<br>Los Angeles, CA 90028 |
| If to Lender: | XXIII Capital Limited<br>FSA#31, Fox Studios Australia,<br>Driver Avenue, Moore Park,<br>Sydney NSW 2021, Australia |

A party may change its address for notices to the other parties in the manner herein prescribed.

**3.4**  **Governing Law; Venue.**  This Agreement shall be interpreted in accordance with the laws of the State of California, applicable to agreements executed and to be wholly performed therein. Any suit, action or proceeding arising out of or related to this Note and/or the Loan Agreement (including allegations of fraud) or the rights of any party hereunder, shall be brought exclusively in the venue of the Los Angeles County, State of California and all parties agree that jurisdiction shall lie therein and submit to personal jurisdiction of thereof. All parties hereby waive any objection it may have to such venue, including, without limitation, any objection based on the assertion that such venue is an inconvenient forum.

**3.5**  **Entire Agreement**. This Agreement contains the entire understanding between and among the parties and supersedes any prior understandings and agreements among them respecting the subject matter of this Agreement. This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto.

**3.6**  **Computation of Time**. In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period shall begin to run on the next day which is not a Saturday, Sunday or legal holiday, in which event the period shall run until the end of the next day thereafter which is not a Saturday, Sunday or legal holiday.

**3.7** **Further Action**. The parties hereto shall execute and deliver all documents, provide all information and take or forbear from all such action as may be reasonably necessary or appropriate to achieve the purposes of the Agreement.

**3.8** **Savings Clause**. If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

**3.9** **Authority**. The parties hereto represent and warrant that they have authority to execute this Agreement and bind themselves to the obligations set forth herein.

**3.10** **Counterparts**. This Agreement may be executed in two or more counterparts, in original form or by facsimile, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

**BORROWER:**

_____
Jonathan Lee Smith, President/CEO
Hoplite, Inc.

**LENDER:**

_____
Andrew Biber

5

*LOAN AGREEMENT – XXIII*