# EXHIBIT J

# FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "Agreement"), dated as of December 4, 2020 (the "Effective Date"), is entered into by and among **BAY POINT CAPITAL PARTNERS II, LP**, a Delaware limited partnership (with its predecessors, successors, and assigns, "Lender"), on the one hand, and **HOPLITE ENTERTAINMENT, INC.**, a California corporation ("Hoplite Ent."); **HOPLITE, INC.**, a California corporation ("Hoplite" and together with Hoplite Ent., "Borrowers"); and **Jonathan Lee Smith**, an individual residing in the State of California ("Guarantor" and collectively with Borrowers, the "Obligors"). Lender and Obligors are referred to collectively herein as the "Parties," each being a "Party".

## RECITALS:

### *The Loan Documents*

A.  On or about September 30, 2020, Borrowers executed and delivered to Lender that certain Loan and Security Agreement, in the amount of Two Million Dollars and 00/100 cents ($2,000,000.00) (as amended, modified, restated, and/or supplemented from time to time, the "Loan Agreement").

B.  On or about September 30, 2020, Borrowers executed and delivered to Lender that certain Note in the original principal amount of Two Million Dollars and 00/100 cents ($2,000,000.00) (as amended, modified, restated, and/or supplemented from time to time, the "Note").

C.  On or about September 30, 2020, Guarantor executed and delivered to Lender that certain Guaranty Agreement (as amended, modified, restated, and/or supplemented from time to time, the "Guaranty"), pursuant to which Guarantor guaranteed, *inter alia*, the payment and performance of all indebtedness of Borrowers to Lender under the Note. The Loan Agreement, the Note, and Guaranty (together with all related and ancillary documents) are collectively referred to as the "Loan Documents".

### *Defaults under the Loan Documents*

D.  Borrowers are in default of the Loan Documents by failing to pay interest payments due on October 31, 2020 and November 30, 2020.

E.  Due to Borrowers failure to make the October 31, 2020 payment within five (5) days of the due date, Borrowers owe Lender a late fee of $10,000.

F.  Borrowers will owe an additional late fee of $10,000 if they fail to make the November 30, 2020 payment within five (5) days of its due date.

G.  Due to the above referenced defaults, additional default interest of 5% per annum is now accruing under the Loan Documents.

1

*Amounts Outstanding Under the Loan Documents*

H.     As of the Effective Date, the following amounts are due and payable by the Obligors under the Loan Documents, excluding other fees, legal fees, costs, and expenses that are or may become due under the Loan Documents:

| | |
|---|---|
| Principal: | $2,000,000.00 |
| Interest: | $213,333.33 |
| Default Interest: | $8,055.56 |
| Legal: | $3,850.00 |
| Late Fee: | $10,000.00 |
| Total due: | $2,235,238.89 |

*\*Per diem* interest (not default) in the amount of Three Thousand Three Hundred Thirty Three Dollars and 33/100 cents ($3,33.33) per day continue to accrue and are payable under the terms of the Loan Documents after December 4, 2020.

I.     The total amount due under the Loan Documents as of the Effective Date is $2,235,238.89, plus any additional attorneys' fees and other costs and fees that are or may become due under the Loan Documents (which are to be determined), the total of which is referred to herein as the "Effective Date Indebtedness").

J.     The Obligors each hereby acknowledge and confirm that: (i) the Loan Documents are in full force and effect and that the Obligors are in default of their obligations thereunder; (ii) the Effective Date Indebtedness is due and payable to Lender by the Obligors, jointly and severally and without defense, recoupment, counterclaim, or offset; (iii) Lender has provided all notice necessary or required to the Obligors; and (iv) Lender has not waived any breach of contract by the Obligors, whether set forth herein or otherwise (collectively, the "Existing Defaults").

**The Requested Forbearance Period**

K.     The Obligors have requested that Lender forbear from exercising the rights and remedies it may have under, *inter alia,* the Loan Documents on account of the Existing Defaults for the Forbearance Period (as defined herein).

L.     Lender is willing to forbear from exercising its remedies during the Forbearance Period, subject to the conditions precedent set forth herein, but only for so long as Obligors act in accordance with and not in breach of the terms and provisions of the Loan Documents, except as expressly set forth herein.

M.     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the applicable Loan Documents.

**AGREEMENT:**

NOW, THEREFORE, in consideration of the foregoing premises, which are hereby incorporated into and made a part of this Agreement, the covenants and agreements hereinafter set

forth, the sum of TEN and NO/100 DOLLARS ($10.00) cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the undersigned, intending to be legally bound, does hereby agree as follows:

1. **Incorporation of Recitals; Forbearance Period**.

   (a) The Recitals to this Agreement are hereby incorporated by reference as is fully set forth herein.

   (b) Obligors agree that the recitals set forth above are true and correct.

   (c) Subject to the terms and conditions hereof, including, without limitation, the satisfaction of the conditions precedent described in Section 2 herein, Lender agrees to forbear from exercising remedies under the Loan Documents, except for those rights and remedies arising under this Agreement, during that period (the "Forbearance Period") commencing on the Effective Date and continuing until the earlier of (i) the occurrence of an Event of Default (as defined herein), (ii) the full payment of all indebtedness and obligations under the Loan Documents, or (iii) December 11, 2020.

   (d) To the extent terms or provisions in this Agreement and the Loan Documents conflict or are inconsistent, the terms of this Agreement shall control.

2. **Covenants; Conditions to Forbearance**.  Each Obligor hereby covenants, acknowledges and agrees with Lender as follows, and each Obligor's compliance with the following shall constitute conditions precedent to Lender's agreement to forbear, and to continue to forbear, as herein provided:

   (a) All representations and warranties contained in this Agreement shall be true and correct in all material respects.

   (b) No default or event of default (other than the Existing Defaults) shall have occurred or be continuing under the Loan Documents.

   (c) Each of the Obligors shall have executed and delivered to Lender a copy of this Agreement and all attachments.

   (d) On a continuing basis throughout the Forbearance Period, and as a condition to Lender's continuing agreement to forbear pursuant to Section 1 of this Agreement, Obligors shall strictly comply with all of the obligations, covenants, terms, and provisions of this Agreement and the Loan Documents in a prompt, timely, and faithful manner.

   (e) On or before December 11, 2020, Obligors shall have paid to Lender the sum of Two-Hundred Thousand Dollars and 00/100 cents ($200,000.00) (the "Forbearance Payment").  The Forbearance Payment will pay past due interest in the amount of $200,000 and will reduce the amount of the Effective Date Indebtedness.

   (f) On or before December 11, 2020, Obligors will pay Two Million Thirteen Thousand Eight Hundred and Fifty Dollars and 00/100 cents ($2,013,850.00).

3

  (g) No later than the end of the Forbearance Period, the Obligors shall make full, final, and irretrievable payment to Lender of the entire indebtedness evidenced by the Loan Documents, including without limitation all outstanding principal thereon as of said date and all accrued and unpaid interest, fees, statutory legal fees, and charges thereunder, plus all fees, costs, and expenses described in this Agreement actually incurred by the Lender as of such date, whether accrued or incurred prior or subsequent to the Effective Date.

  **3.** **Waiver of Late Fee and Default Interest.** If no default occurs under Section 4 below, Lender agrees, upon receipt of all other Effective Date Indebtedness, to waive the default interest referenced in the Effective Date Indebtedness ($8,055.56).  This waiver does not apply if any Event of Default occurs.

  **4.** **Events of Default**.  Each of the following shall constitute an immediate Event of Default (each, an "Event of Default") under this Agreement:

  (a) Any of the Obligors shall have failed to timely perform, observe, and/or comply with any of the obligations, terms, or conditions of this Agreement, including, without limitation, those covenants and obligations set forth in Section 2 of this Agreement;

  (b) The entry of a decree or order by a court of competent jurisdiction for relief with respect to any of the Obligors under Title 11 of the United States Code as now constituted, hereafter amended, or any other applicable federal, state, or foreign bankruptcy law or similar law appointing of a receiver, liquidator, assignee, trustee, custodian, sequestrator, conservator, or similar official over any of the Obligors, or of any part of the property of any of the Obligors, or ordering the winding-up of or liquidation of the affairs of any of the Obligors;

  (c) The filing by any of the Obligors of a petition or answer or consent seeking relief under Title 11 of the United States Code, as now constituted or hereafter amended, or any other applicable federal, state, or foreign bankruptcy law or other similar law, or the consent by any of the Obligors to the institution of proceedings thereunder or to the filing of any such petition or the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator, conservator (or other similar official) over either of any of the Obligors, or of any portion of the property of any of the Obligors;

  (d) Any representation, warranty or statement made in or pursuant to this Agreement shall be materially false or erroneous;

  (e) Obligors shall have failed to pay all of the outstanding indebtedness and obligations under the Loan Documents on or before **December 11, 2020 at 4:00 p.m.** prevailing eastern standard time. Obligors may contact Lender at any point during the term of this Agreement to ascertain the amount of the outstanding indebtedness and obligations under the Loan Documents.

  **5.** **Remedies**.  Upon the occurrence of an Event of Default, Lender may utilize all remedies available at law or under the Loan Documents, or this Agreement.  The Obligors hereby acknowledge and agree that the occurance of an Event of Default hereunder shall constitute an immediate default and event of default under each of the Loan Documents.  Immediately upon the occurrence of an Event of Default, Borrower shall make full, final, and irretrievable payment to

Lender of the entire outstanding indebtedness and obligations evidenced by, and provided for under, the Loan Documents, including without limitation, all outstanding principal and all accrued and unpaid interest, fees, and charges thereunder.

6. **Default Interest.** Upon the occurrence of an Event of Default identified above or under the Loan Documents (including any failure to pay the loan in full on the maturity date), Obligors agree that in addition to the stated contract rate of interest (5% per month), Obligors will owe additional default interest in the amount of 20% per annum.

7. **Waiver of Notice and Cure Provisions**. Each Obligor hereby knowingly and intentionally waives all rights, claims, protections and defenses that such Obligor may have under the Loan Documents regarding Lender's obligation to provide notice of any default under any Loan Document and/or an opportunity to cure any default under any Loan Document, other than such notice or opportunity to cure that may not be waived under applicable law.

8. **Attorneys' Fees**: Obligors are and shall remain liable to Lender for Lender's expenses and costs incurred in the enforcement of Lender's rights under the Loan Documents or applicable law, including, without limitation, reasonable attorneys' fees, without further notice to Obligors and without any further action on the part of Lender.

9. **Representations and Warranties**.

(a) Obligors hereby acknowledge and confirm, as to each, that (i) Obligors are liable to Lender under the Loan Documents for the full amount of the indebtedness thereunder as referenced in the Recitals above, and the costs and expenses of Lender incurred in connection with the enforcement of the Loan Documents and the negotiation, preparation, or enforcement of this Agreement, and any documents, agreements or instruments referred to herein, all without offsets, claims, counterclaims, recoupments, or defenses of any kind or nature whatsoever; (ii) the Loan Documents are in full force and effect and are enforceable in accordance with their respective terms; (iii) Obligors have no claims, defenses, causes of action, counterclaims, recoupments, or offsets against Lender or Lender's respective officers, employees, agents, directors, subsidiaries, affiliates, or attorneys of any kind or nature whatsoever; and (iv) Lender has valid and perfected, second-priority security interests in and to the Property.

(b) Obligors hereby further represent and warrant that:

(i) This Agreement and the other Loan Documents constitute the legal, valid, and binding obligations of Obligors, are enforceable in accordance with their terms, and have been duly authorized, executed, and delivered by Obligors, except as the enforceability hereof or thereof may be limited by bankruptcy, insolvency, moratorium, and other similar laws affecting creditors' rights generally and by general principles of equity, whether considered in a proceeding at law or in equity;

(ii) Obligors have the power and authority to execute, deliver, and carry out the terms and provisions of this Agreement, and have taken or caused to be taken all necessary action to authorize the execution, delivery, and performance of this Agreement and the transactions contemplated hereby, and

(c) Obligors hereby expressly acknowledge and confirm that the foregoing representations and warranties are being specifically relied upon by Lender and its agents as a material inducement to Lender to enter into this Agreement and to forbear from exercising Lender's rights and remedies, other than as set forth herein. The foregoing representations and warranties shall survive the execution and delivery of this Agreement and the documents, agreements and instruments to be executed or delivered herewith.

10. **No Defenses; Payment; Reliance**.

(a) Obligors hereby acknowledge and confirm that there are no existing defenses, claims, counterclaims, or rights of recoupment or set-off against Lender in connection with the obligations owed to Lender under the Loan Documents, or in connection with the negotiation, preparation, execution, performance, or any other matters relating to the Loan Documents or this Agreement.

(b) Obligors further acknowledge and agree that, notwithstanding anything to the contrary set forth in this Agreement, Lender does not have, nor shall have, an obligation to: (i) amend any of the Loan Documents or otherwise further restructure the obligations under the Loan Documents; (ii) make any further financial accommodations, leases, advances or extensions of credit to or for the benefit of any Obligor, (iii) extend the Forbearance Period; (iv) refrain from terminating the Forbearance Period upon the occurrence of any Event of Default; or (v) enter into any other instruments, agreements or documents regarding any of the same with Obligors, and that neither Lender or any of its representatives have made any agreements with, or commitments or representations or warranties to, Obligors, either in writing or orally, other than as expressly stated in this Agreement.

(c) No acceptance by Lender of any payments made by Obligors with respect to this Agreement or any other Loan Document shall: (i) constitute any agreement or commitment by Lender to amend or modify the Loan Documents; (ii) constitute an agreement by Lender to continue to accept such payments, except as set forth herein; (iii) constitute any course of conduct by Lender, (iv) cure any Default or Event of Default under the Loan Documents; (v) cure any default or event of default under any of the other Loan Documents; (vi) constitute any agreement or commitment by Lender to forbear from the exercise of any of Lender's rights or remedies pursuant to the Loan Documents beyond what is set forth herein; (vii) waive or alter in any way any of Lender's rights or remedies pursuant to the Loan Documents, applicable law or otherwise, except as expressly set forth herein; or (viii)) constitute Lender's agreement to, or acceptance of, any conditions set forth in connection with any such tendered payment, except as set forth herein.

(d) Obligors expressly understand and further agree that Lender is relying on all terms, covenants, conditions, warranties and representations set forth in this Agreement as a material inducement to Lender to enter into this Agreement.

11. **Cumulative Remedies; Non-Waiver**.

(a) Except as otherwise specifically and expressly stated herein, the rights, powers, authorities, remedies, interests and benefits conferred upon Lender by and as provided for in this Agreement are intended to supplement, and be in addition to (and shall not in any way

6

replace, supersede, amend, limit or restrict), the rights, powers, authorities, remedies, interests, and benefits conferred by the Loan Documents.

(b) Except as otherwise specifically and expressly stated herein, Lender's execution of or performance under this Agreement does not (and it shall not be construed so as to) waive, relinquish, restrict or limit in any way any of the rights, remedies, claims or causes of action that Lender has or may have under or with respect to the Loan Documents or applicable law (all of which are expressly reserved) regardless of whether any of the foregoing relate to or arise out of acts, omissions, events or transactions occurring before or after the date hereof.

(c) Nothing in this Agreement or any related documents shall constitute a waiver of any existing or future default or event of default or, to the extent not expressly provided herein, any rights and/or remedies of Lender.

(d) Except as otherwise specifically and expressly stated herein, Lender hereby expressly reserves all rights to take any and all actions, and exercise any and all remedies, authorized under any of the Loan Documents, or at law or in equity as a result of or with respect to the occurrence and continuance of any Defaults, Events of Default, violations, defaults, or events of default that have or may have heretofore occurred, or which may hereafter occur, thereunder. Nothing contained herein, and no action taken by Lender pursuant hereto or as provided herein, shall be deemed to be a waiver of any of such defaults, violations or events of default.

(e) No delay on the part of Lender in the exercise of any power, right or remedy under this Agreement, or any of the other Loan Documents at any time shall operate as a waiver thereof, and no single or partial exercise by Lender of any power, right or remedy shall preclude other or further exercise thereof or the exercise of any other power, right or remedy.

**12. Release; Indemnification**.

(a) In consideration of the accommodations being made available by Lender to or for the benefit of Obligors under this Agreement, including, without limitation, Lender's agreement to forbear, Obligors, for themselves, respectively, and their respective agents, employees, representatives, officers, directors, shareholders, subsidiaries, successors and assigns, do hereby unconditionally remise, release, and discharge Lender and each of its respective shareholders, subsidiaries, affiliates, directors, servants, agents, employees, financial advisors, consultants, representatives, officers, attorneys, and their respective successors and assigns (collectively, the "Released Parties," and each being a "Released Party") of and from any and all claims, counterclaims, demands, actions, and causes of action of any nature whatsoever, whether at law or in equity, including, without limitation, any of the foregoing arising out of or relating to any of the Loan Documents, any acts or omissions of any Released Party in connection therewith (including, without limitation, extensions of credit and other financial accommodations made or not made to Obligors), the transactions described in this Agreement, which they now have or hereafter can or may have for or by reason of any cause, matter or thing whatsoever, against any of the Released Parties, from the beginning of the world to the date hereof. This release shall survive execution and delivery of this Agreement and shall remain in full force and effect after an Event of Default or the termination of the Forbearance Period.

7

(b)  From and after the date hereof, Obligors shall indemnify, defend and hold harmless Lender and each of its respective shareholders, subsidiaries, affiliates, directors, servants, agents, employees, representatives, officers, attorneys and their respective heirs, personal representatives, successors and assigns (severally and collectively, the "**Indemnified Parties**") against and from any and all liability for, and against and from all losses or damages Indemnified Parties may suffer as a result of, any claim, demand, cost, expense, or judgment of any type, kind, character or nature (including attorneys' fees and court costs), which Indemnified Parties shall incur or suffer as a result of (a) any act or omission of Obligors or any of their agents or representatives in connection with the transactions described in this Agreement and any of the instruments, agreements and documents referred to in this Agreement, (b) the inaccuracy of any of the representations or warranties of Obligors, or (c) the breach of any of the respective covenants set forth herein of Obligors.  This indemnification shall survive execution and delivery of this Agreement and shall remain in full force and effect after and Event of Default and/or the termination of Forbearance Period.

13.  **Notice**.  All notices, requests and other communications to either party hereunder, to the extent required, shall be in writing and shall be given to such party in accordance with the Loan Documents.

14.  **No Third-Party Beneficiaries**.  This Agreement is made and entered into for the sole protection and benefit of the Parties hereto and no other person or entity shall have any right of action hereon, right to claim any right or benefit from the terms contained herein, or be deemed a third party beneficiary hereunder.

15.  **Severability**.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement, it being the Parties' intention that each and every provision of this Agreement be enforced to the fullest extent permitted by applicable law.

16.  **Further Assurances**.  At Lender's reasonable request, Obligors shall promptly execute any other document to evidence or further the intent of the Parties set forth herein.

17.  **Counterparts**.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.  The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by other parties to this Agreement attached thereto. Delivery of an executed counterpart of the signature page by telecopier, pdf, email or facsimile shall be as effective as delivery of an original manually executed counterpart.

18.  **Descriptive Headings; Construction**.  The headings in this Agreement are intended for convenient references only and shall not in any way limit, amplify or be used in interpreting the terms of this Agreement.  The masculine, feminine or neutral gender in the singular

or plural shall be deemed to include the others wherever the context of this Agreement so requires. This Agreement shall not be construed against any party hereto as the drafters of this Agreement.

19. **Waiver of Trial by Jury**. Obligors hereby waive, to the fullest extent permitted by applicable law, the right to trial by jury in any action, proceeding or counterclaim filed by any party, whether in contract, tort or otherwise relating directly or indirectly to this Agreement or any acts or omissions of Obligors in connection therewith or contemplated thereby.

20. **GOVERNING LAW; JURISDICTION; VENUE.** THIS AGREEMENT AND THE LOAN DOCUMENTS SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES THEREOF. THE PARTIES HERETO HEREBY (I) CONSENT TO THE PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF GEORGIA IN CONNECTION WITH ANY CONTROVERSY RELATED TO THIS AGREEMENT; (II) WAIVE ANY ARGUMENT THAT VENUE IN ANY SUCH FORUM IS NOT CONVENIENT; AND (III) AGREE THAT A FINAL JUDGMENT IN ANY SUCH SUIT, ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

21. **Time of Essence**.  Time is of the essence with respect to this Agreement.

22. **Successors and Assigns**. This Agreement shall be binding upon, and shall inure to the benefit of the Parties and their respective successors and assigns, except that Obligors may not assign their rights under this Agreement or any of the Loan Documents without the prior written consent of Lender.

23. **Amendments**. This Agreement may be amended, supplemented or otherwise modified only by a written agreement signed by the Parties, and none of the provisions hereof may be waived without the written consent of Lender.

24. **Acknowledgement of Continuation of Liabilities; Integration.** The obligations of Obligors under the Loan Documents shall remain in full force and effect, and shall not be released, impaired, diminished, or in any other way modified or amended as a result of the execution and delivery of this Agreement or by the agreements and undertakings of the parties contained herein, except as specifically set forth herein.  Obligors hereby ratify and confirm that each of the Loan Documents to which they are a party is valid and enforceable, without defense, and the rights granted thereunder in favor of Lender are valid and enforceable.  This Agreement and the instruments, agreements, and documents referred to in this Agreement shall be deemed incorporated into and made a part of the Loan Documents.  All such instruments, agreements and documents, and this Agreement, shall be construed as integrated and complementary of each other, and, except as otherwise specifically provided in this Agreement, as augmenting and not restricting Lender's rights, remedies, benefits and security.  If after applying the foregoing an inconsistency still exists, the provisions of this Agreement shall control.  This Agreement is not and shall not be construed to be a novation or course of performance.

25. **<u>No Course of Dealing</u>**. Obligors acknowledge that (a) except as expressly set forth herein, Lender has not agreed to (and has no obligation whatsoever to discuss, negotiate or agree to) any restructuring, modification, amendment, waiver or forbearance with respect to the Loan Documents or any of the terms of the Loan Documents, (b) no understanding with respect to any other restructuring, modification, amendment, waiver or forbearance with respect to Loan Documents or any of the terms of the Loan Documents shall constitute a legally binding agreement or contract, or have any force or effect whatsoever, unless and until reduced to writing and signed by authorized representatives of Obligors and Lender, and (c) the execution and delivery of this Agreement has not established any course of dealing between the parties hereto or created any obligation or agreement of Lender with respect to any future restructuring, modification, amendment, waiver or forbearance with respect to any of the terms of the Loan Documents.

[SIGNATURES ON FOLLOWING PAGES]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be acknowledged, executed and delivered under seal by their duly authorized officers as of the date first above written.

**BORROWERS:**

**HOPLITE ENTERTAINMENT, INC.**,

By:_____
Name:    Jon Smith

Title:        C.E.O.

**HOPLITE, INC.**,

By:_____
Name:    Jon Smith

Title:        C.E.O.

Signature Page

**GUARANTOR**:

**JONATHAN LEE SMITH**

_____

[LENDER SIGNATURE ON FOLLOWING PAGE]

Signature Page

|  | **LENDER**: |
|---|---|
| Signed, sealed and delivered | **BAY POINT CAPITAL PARTNERS II, LP** |
| in the presence of: | a Delaware limited partnership |

_____  By:_____
Notary Public                                                  Name:
[NOTARY SEAL]                                              _____
                                                                         Its: Authorized Signatory

                                                                         [CORPORATE SEAL]

Signature Page