# EXHIBIT N

# LICENSE AGREEMENT

THIS LICENSE AGREEMENT ("Agreement") is made and effective as of July 1, 2020 ("Effective Date") by and between Screen Media Ventures, LLC ("Screen Media") and Hoplite Entertainment, Inc. ("Licensor").

1. <u>Programs</u>
   The Programs as listed on Exhibit A hereto (individually referred to herein as "Program" and collectively as "Programs"). The parties hereby acknowledge that it is their intent to modify Exhibit A from time to time, provided that all such modifications shall be in writing.

2. <u>The License</u>
   a. Licensor hereby grants to Screen Media the exclusive right to distribute the Programs during the "Term" and throughout the "Territory" (both of which are defined hereafter) via any and all ad supported video-on demand platforms and or ad supported linear platforms that are owned, controlled or managed by Chicken Soup for the Soul Entertainment, Inc. ("CSSE"), and/or an affiliate of CSSE (collectively referred to herein as the "CSSE Platforms "individually referred to herein as "CSSE Platform"). Such Platforms currently include, but are not limited to, Crackle, Truli, Truli Espanol, Popcornflix, Popcornflix Kids, Popcornflix Comedy, Espanolflix and Frightpix. For the purposes of clarity and the avoidance of doubt, the license granted to Screen Media is limited to CSSE Platforms.

   b. Subject to any restrictions which are notified to Screen Media in writing on or before delivery of materials, Licensor hereby grants to Screen Media the non-exclusive right to advertise, promote and publicize the Program(s) in all media worldwide including: (i) writing, publishing and exploiting synopses, serializations and/or resumes of the Program(s); (ii) copying, publishing and using the names, likenesses, photographs and voices of the artists and characters appearing within the Program(s) and all individuals credited in the Program(s) or engaged to perform production services in the Program(s); (iii) exhibiting, distributing and exploiting short extracts from the Program(s) of up to three (3) minutes in length.

3. <u>Term</u>
   The Agreement shall commence on the Effective Date. The Programs availability shall continue for three (3) years following Screen Media's approval of all delivery materials listed in Exhibit B ("Term"). This Agreement shall renew automatically for twelve (12) month periods unless terminated by either party not less than ninety (90) days prior to the expiration of the then current Term.

4. <u>Territory</u>
   The United States and its territories, possessions, protectorates, trusteeships, and commonwealths, and wherever located, all installations including, without limitation, military bases, diplomatic posts, oil rigs, and all ships at sea and airlines flying the flag of the United States.

5. <u>Holdbacks and Availability</u>
   Except as described subparagraph 1(a)(i) above, Licensor agrees to license the Programs without any holdbacks in the Territory.

6. <u>Delivery to Screen Media</u>
   Licensor shall deliver the Programs to Screen Media pursuant to the delivery specifications set forth on Exhibit B. It is of the essence that a fully completed metadata sheet be included in this delivery. In the event Licensor fails to deliver any of the items listed in Exhibit B, Screen Media shall have the option to manufacture such items and recoup the verifiable, third-party costs ("Delivery Costs"). However, Screen Media shall notify Licensor in writing of such items prior to incurring any such costs and provide Licensor a reasonable period of time after such notice to cure the defects in delivery. In the event

Licensor agrees that Screen Media may manufacture such items, Screen Media shall provide Licensor a written itemization of any such costs.  Additionally, any materials created for Screen Media's exploitation of the Programs shall be made available to Licensor.

7. <u>Allocation of Gross Receipts.</u>
"Gross Receipts" shall be defined and comprised of all monies received and retained by Screen Media from its distribution of the Picture to the CSSE Platforms. Licensor acknowledges that Screen Media makes no representation or warranty as to the amount of Gross Receipts that may be achieved. Gross Receipts shall be allocated as follows and in the following order:

   a. Recoupment of verifiable Delivery Costs, if applicable; and
   b. Fifty Percent (50%) of remaining balance to Screen Media;
   c. Fifty Percent (50%) of remaining balance to Licensor.

8. <u>Statements and Payments</u>
Screen Media shall provide Licensor with quarterly statements sixty (60) days after the end of each calendar quarter detailing all income generated by the Programs and received by Screen Media. All payments shall be made within sixty (60) days after receipt by Screen Media of an invoice from Licensor. Licensor acknowledges that any payment that is less than Two Hundred Fifty Dollars ($250) ("Threshold Amount") shall be carried over to the following statement until the amounts owed reach the Threshold Amount. Licensor shall have industry standard audit and inspection rights. All statements shall be deemed incontestable after one (1) year from the date issued unless specifically objected to in writing by Licensor.

9. <u>Licensor Marks</u>.
Licensor hereby grants Screen Media a non-exclusive, irrevocable, royalty-free license throughout the Territory for the term of the Agreement to use the names, logos, trademarks, service marks, URLs, and other materials that identify Licensor and/or its goodwill, (the "Licensor Marks"), solely in connection with distribution of the Programs, and the promotion thereof, in all media, now known or hereafter discovered.

10. <u>Press Release.</u>
Screen Media shall have the right to issue a press release announcing this Agreement.

11. <u>Breach; Cure; Termination</u>.
In the event that a party fails to perform a material obligation under this Agreement, the non-breaching party shall provide written notice of the alleged breach to the other party. If the breaching party fails to cure the breach within thirty (30) calendar days of receipt of such notice from the other party, the non-breaching party may elect to terminate this Agreement.

12. <u>Representation and Warranties and Indemnities</u>.

   a. Each party hereto warrants and represents that they each have the right and power to enter into this Agreement, to grant all rights granted herein, and to perform all of their respective obligations.

   b. Licensor warrants and represents that (i) Licensor owns or controls all rights in and to the Program and in and to all literary, dramatic and musical material included therein required for

  Distributor to exercise the Granted Rights, without any lien, claim or other encumbrance thereon; (ii) all musical compositions and/or performances of musical compositions contained in the Program have been licensed for in-context use, out-of-context use (including use in advertising and publicity of the Program) in all media, now known, worldwide, for the duration of Term; (iii) all licenses of any material licensed for use in connection with the Program contain language to the substantive effect that the licensor of such material has not and shall not commit any act likely to prevent or hinder the full enjoyment of the rights that are licensed hereunder; (iv) no part of the Program nor any use of the Program by Screen Media or its affiliates in exercising the Granted Rights will violate or infringe upon any rights, including but not limited to copyright, publicity, or name and likeness rights, of any third party; (v) there are no guilds or unions that may claim jurisdiction over the services to be rendered hereunder and no collective bargaining agreements covering the Program; and (vi) there is no action, suit, claim or proceeding pending, affecting or threatened against the Program.

 c. Screen Media warrants and represents that it is a corporation validly existing and in good standing under the laws of its domicile; and it has the full right, power and authority to enter into this Agreement and to perform and fulfill all of the obligations to be rendered and satisfied by it hereunder.

13. <u>Assignment.</u>
This Agreement shall inure to the benefit of, and be binding upon the parties' successors, licensees and assigns. Screen Media shall be entitled to sublicense the rights granted herein to the CSSE Platforms subject to any agreement between Screen Media and the CSSE Platforms shall fall under the scope of this Agreement and Screen Media shall remain fully and primarily responsible and liable to Licensor under this Agreement. The rights and obligations of the parties under this Agreement may not be transferred, assigned or sublicensed without the prior written consent of the other party, which shall not be unreasonably withheld.

14. <u>General</u>.
This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and shall supersede all prior written or oral agreements between Screen Media and Licensor with respect hereto. This Agreement shall not be modified, except by written instrument signed by authorized representatives of both parties. This Agreement shall be exclusively governed and construed in accordance with the laws of the State of Connecticut applicable to contracts entered and fully to be performed therein any disputes shall be resolved in Connecticut courts. If any provision of this Agreement shall be held by a court of competent jurisdiction to be contrary to law, that provision will be enforced to the maximum extent permitted by law and the remaining provisions will remain in full force and effect.

If the terms set forth above meet with your approval, please so indicate by signing in the space provided below.

Screen Media: *David T. Fannon*   Licensor: _____

Date: 07-2-20   Date: **June 30, 2020**

## EXHIBIT A

## PROGRAMS

1. CHARGED & DISBARRED 1 - 13 X 30S 4K
2. STABLE WARS - 8 X 30S HD
3. RECIPE HUNTERS - 16 X 60S HD
4. FOXY LADIES - 12 X 30S HD
5. CASH FLOOR - 26 X 30S HD
6. WHAT'S IN MY POCKET - 13 X 30S 4K
7. CULINARY ESCAPES - 10 X 30S 4K
8. DRONE WARS - 13 X 60S 4K

**EXHIBIT B**

**DELIVERY MATERIALS AND REQUIREMENTS**

Delivery of the Program(s) shall consist of Licensor making delivery to Screen Media of the requested materials below.

1. CONTACT

    Max Leonard
    800 Third Avenue
    NY, NY 10022
    max@screenmedia.net
    212 308 1790

2. VIDEO
    a. Crackle
        i. Apple ProRes 422HQ
        ii. HD Resolution 1920x1080
            1. or SD resolution 720x486 or 720x576
        iii. Original Aspect Ratio
        iv. No Letterboxed or Anamorphic SD content accepted
        v. 23.98 or 25 FPS
        vi. Progressive Scan
        vii. Stereo PCM Audio, 48 Khz or Higher, 16 or 24 bit
            1. If 5.1 audio is available, please arrange tracks as follows:
            2. Track 1: 5.1 Left
            3. Track 2: 5.1 Right
            4. Track 3: 5.1 Center
            5. Track 4: 5.1 LFE
            6. Track 5: 5.1 Left Surround
            7. Track 6: 5.1 Right Surround
            8. Track 7&8: Stereo Mix (PAIR)
        viii. All marketing materials created for the Programs, including but not limited to trailers, TV spots, ads, etc.
        ix. For Television content, please ensure commercial blacks (if present) are no longer than 1 second.
        x. Video must contain program content only (No bars/tone, textless, etc. at head or tail)
    b. Popcornflix/Truli
        i. H264
        ii. Same resolution/aspect ratio/framerate/scan as above ProRes spec
        iii. HD Video Bitrate: 11-15 Mbit/s
        iv. SD Video Bitrate: 3-5 Mbit/s

        v. Stereo AAC audio, 192 kbit/s or higher

3. <u>CAPTIONS</u>
   a. For captions the following formats are required-
      i. WC3 SMPTE-TT .xml (For Crackle)
      ii. WebVTT .vtt
      iii. Subrip Text .srt
      iv. Scenarist .scc
   b. Captions must be synced to the video file as delivered, in the correct frame rate and accounting for any commercial blacks.

4. <u>KEY ART</u>
   a. Crackle Plus
      i. High-resolution vertical and horizontal key art
         a. Delivered in the following formats:
            i. Vertical JPEG or PNG - minimum 214x306 pixels, maximum 250 kilobytes, minimum 72dpi
            ii. Vertical Layered PSD - minimum 2700x4050 pixels
            iii. Horizontal Layered PSD - 3840x2160 pixels (minimum 1920x1080 pixels)
         b. RBG and CMYK are both acceptable
         c. No logos, callouts, bugs, watermarks, credits, reviews, ratings
         d. Please use the following naming convention: "MovieTitle_PixelWidthxPixelHeight" e.g. "Titanic_214x306.jpg"
      ii. Publicity Stills
         a. Minimum of 5 stills per title
         b. TIFF and JPEG are both acceptable
         c. Minimum 1920x1080 pixels
         d. Textless, centralized subject, feature key talent
         e. Avoid images that may not be suited for all audiences, examples include: smoking, nudity, drug use, violence and weapons pointed at the viewer.

5. <u>DOCUMENTATION</u>
   a. Metadata – Licensor to complete all information requested on supplied metadata template
   b. E&O Certificate
   c. Timing Sheet
   d. Music Cue sheet