# EXHIBIT U

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BAY POINT CAPITAL PARTNERS II, LP,<br><br>Plaintiff,<br><br>v.<br><br>HOPLITE, INC., HOPLITE ENTERTAINMENT, INC., and JONATHAN LEE SMITH,<br><br>Defendants. | Civil Action No. 1:21-cv-375-MLB |

# ORDER

**THIS CAUSE** came before the Court on Plaintiff Bay Point Capital Partners II, LP's ("Bay Point") Motion for Appointment of Receiver (the "Motion"). (Dkt. 3.) The appointment of a receiver is an extraordinary remedy that is used sparingly. *Ip Co., LLC v. Cellnet Tech. Inc.*, No. 1:06-cv-3048, 2008 WL 11337779, at *1 (N.D. Ga. Dec. 18, 2008). A court should grant such relief only upon a clear showing that: (1) fraudulent activity has occurred or will likely occur; (2) the party seeking receivership has a valid claim to the property that is subject to the proposed receivership; (3) there is imminent danger that the property

will be lost or diminished in value; (4) legal remedies are inadequate; (5) less severe equitable remedies are unavailable; and (6) it is probable that a receivership will do more good than harm. *Id.*

On February 10, 2021, the Court held an evidentiary hearing, at which the Court heard oral argument from counsel for the parties and live witness testimony along with the admission of exhibits into the record. At the conclusion of the hearing, this Court made certain findings. The Court concluded that Bay Point had shown fraudulent activity occurred, most notable by showing Defendants Hoplite entities[1] and Smith fraudulently caused Bay Point to believe Hoplite was already legally entitled to payments totaling approximately $1,963,000 from the agreements with Screen Media Ventures, LLC ("Screen Media") and Big Media Holdings, LLC ("Big Media"), that the receipt of that money was imminent, and that Hoplite was on the cusp of delivering content to Ineomeida, Inc., d/b/a Fight Channel World Network ("Fight Channel") and expected payment of approximately $1,000,000 from that company

---

[1] Herein, "Hoplite entities" or simply "Hoplite" refers to both Defendant Hoplite, Inc., and Defendant Hoplite Entertainment, Inc.

- 2 -

within forty-five days. (Exhibit O.) The Court found Bay Point's witness (Chandler Rierson) credible and outlined additional evidence of Defendants' fraudulent activity beginning in at least late September 2020 and continuing into recent weeks.[2] The Court further found and reiterates its conclusion that Bay Point has satisfied its obligation of proving the other grounds for a receiver, except for showing less severe equitable remedies are not available.[3] As a result, the Court—with the

---

[2] Defendants argue Bay Point cannot establish the first element of the receivership analysis because (1) the merger clause in the Loan Agreement precludes Bay Point from bringing a fraud claim and (2) when Bay Point uncovered the fraud, it did not repudiate the Loan Agreement but rather entered into Forbearance Agreements. (Dkt. 21 at 11, 16.) The Court need not decide today whether Bay Point can ultimately prevail on a fraud claim. The law does not require a party to present evidence of a viable fraud claim under state law to establish the first element towards the appointment of a receiver. It merely needs to show that the party against whom a receiver is sought engaged in fraudulent activity. The appointment of a receiver is an equitable remedy. So a showing of some inequity by the defendant—that is, fraud—is necessary to access the Court's discretion to impose this equitable remedy. That is not to say, a party seeking equitable relief must also show it has a fully indefensible fraud claim that could immediately withstand a motion to dismiss or a motion for summary judgment.

[3] Bay Point also conceded—in the light of information provided by Columbia State Bank showing Hoplite and Smith deceived Bay Point into believing Columbia State Bank had subordinated its SBA loan claim to

agreement of the parties—agreed to impose an injunction to protect Hoplite's accounts receivable and assets from pilfering or waste while this case proceeds. The Court will revisit the Motion, and its concern about this one issue, if this interim and less severe equitable remedy fails to provide the necessary protection. At that point, the Court will have the benefit of knowing whether the less severe remedy of a preliminary injunction is insufficient.

Having considered Bay Point's Motion and Memorandum of Law in Support, the Verified Complaint, Defendants' Response to Bay Point's Motion and Memorandum of Law in Support (Dkt. 21), arguments of counsel, as well as witness testimony, evidence, and other matters of record, the Court, acting within its inherent equitable powers, concludes for the reasons set forth on the record at the hearing held on February 10, 2021, that Bay Point has established its entitlement to preliminary injunctive relief. Specifically, the Court finds that: (1) Bay Point is likely to succeed on the merits; (2) Bay Point will suffer irreparable harm in the

---

Bay Point's loan—that it may not have a priority claim to the property at issue. If the Court were to appoint a receiver, it could work around that complication.

absence of preliminary injunctive relief; (3) the balance of equities tips in Bay Point's favor; and (4) injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In the light of the foregoing, and pursuant to this Court's equitable power to fashion appropriate injunctive relief, it is hereby **ORDERED AND ADJUDGED as follows:**

1. Bay Point's Motion for Appointment of Receiver (Dkt. 3) is **CONTINUED** on the terms and conditions set forth herein.

2. Bay Point designates Marshall Glade, Managing Director of B. Riley Advisory Services, to serve as its agent in carrying out the terms of this Order.

3. Each Defendant, and their affiliates, agents, servants, employees, successors, assigns, representatives, and all persons in active concert with them are preliminarily restrained, enjoined, and prohibited from directly or indirectly disbursing any proceeds from Screen Media pursuant to that certain License Agreement dated July 1, 2020, by and between Hoplite Entertainment, Inc. and Screen Media Ventures, LLC (the "Screen Media License Agreement"); Big Media pursuant to that

certain License Agreement dated June 18, 2020, by and between Hoplite Entertainment, Inc. and Big Media (the "Big Media License Agreement"); and from Fight Channel pursuant that certain Acquisition Agreement dated March 4, 2020, by and between Fight Channel and Hoplite, Inc. (the "Fight Channel Agreement") to any individual or entity other than Mr. Glade.  To the extent such proceeds have disbursed prior to the date of this Order and are currently held by Defendants or their affiliates, agents, servants, employees, successors, assigns, attorneys, representatives, or a person in active concert with them, such funds shall be directed to Mr. Glade within three (3) days of this Order to hold pending further order of the Court.  Any such proceeds received by Defendants or their affiliates, agents, servants, employees, successors, assigns, representatives, or a person in active concert with them after the date of this Order shall be directed to Mr. Glade within three (3) days of receipt to hold pending further order of the Court.  Mr. Glade shall account for any and all such funds received pursuant to this Section of this Order.

4. Screen Media is hereby preliminarily restrained, enjoined, and prohibited from directly or indirectly disbursing any proceeds pursuant to the Screen Media License Agreement to anyone other than to Mr. Glade. Screen Media must direct any such proceeds, to the extent they are currently, or later become, due and payable, to Mr. Glade to hold pending further order of the Court, and Mr. Glade shall account for any and all such funds received. Screen Media is hereby further directed, when contacted by Mr. Glade, to speak with Mr. Glade regarding the Screen Media License Agreement, including but not limited to, verifying, explaining, and confirming the current status of the Screen Media License Agreement.

5. Big Media is hereby preliminarily restrained, enjoined, and prohibited from directly or indirectly disbursing any proceeds pursuant to anyone other than to Mr. Glade. Big Media must direct any such proceeds, to the extent they are currently, or later become, due and payable, to Mr. Glade to hold pending further order of the Court, and Mr. Glade shall account for any and all such funds received. Big Media is hereby further directed, when contacted by Mr. Glade, to speak with Mr.

Glade regarding the Big Media License Agreement, including but not limited to, verifying, explaining, and confirming the current status of the Big Media License Agreement.

6. Fight Channel is hereby preliminarily restrained, enjoined, and prohibited from directly or indirectly disbursing any payments pursuant to anyone other than to Mr. Glade. Fight Channel must direct any such proceeds, to the extent they are currently, or later become, due and payable, to Mr. Glade to hold pending further order of the Court, and Mr. Glade shall account for any and all such funds received. Fight Channel is hereby further directed, when contacted by Mr. Glade, to speak with Mr. Glade regarding the Fight Channel Agreement, including but not limited to, verifying, explaining, and confirming the current status of the Fight Channel Agreement.

7. Bay Point is responsible to notify Screen Media, Big Media, and Fight Channel of this Order, and to provide a copy of this Order to them. Bay Point may notify Screen Media, Big Media, and Fight Channel of this Order by electronic means, including by electronic mail. Bay Point

is responsible for informing Screen Media, Big Media, and Fight Channel how to pay money to Mr. Glade, subject to this Order.

8.  Each Defendant, and their affiliates, agents, servants, employees, successors, assigns, representatives, and all persons in active concert with them are hereby preliminarily restrained, enjoined, and prohibited from directly or indirectly:

    a.  Selling, liquidating, foreclosing upon, transferring and/or converting any of the Collateral, or any part thereof, except as permitted by this Court's Order.[4]

    b.  Pledging the Collateral, or any part thereof, as security for any new debt obligations.

    c.  Transferring, conveying, concealing, or otherwise disposing of the Collateral or any revenues or proceeds derived from the operation of the Collateral outside of the ordinary course of business with unrelated third parties.

    d.  Taking any other action, directly or indirectly, to hinder, obstruct, or otherwise interfere with Mr. Glade and/or his designees in the performance of their duties under this Order.

---

[4] The term "Collateral," as used herein, shall have the meaning set forth in Section 4.1 of the Loan and Security Agreement entered into as of September 30, 2020, by and between Hoplite entities and Bay Point.

9. Within three business (3) days of the Court's entry of this Order, Defendants shall produce to Mr. Glade all financial records, consolidated and consolidating balance sheets, consolidated and consolidating income and retained earnings and cash flows, bank statements, books, ledgers, accounting, insurance, loan documents and related financing agreements (including, but not limited to, any standby creditor agreements or debt subordination agreements, and any documents evidencing or regarding any other financing arrangements, whether as borrower, lender, or otherwise), a complete listing of all assets belonging to each of the Defendants, and all other records pertaining to each of their financial activities from January 1, 2020 to present (hereinafter, the "Books and Records"). Mr. Glade is empowered to inform Bay Point of his receipt of the Books and Records, and he shall share copies of the same with Bay Point. Thereafter, Defendants shall provide Mr. Glade with updated Books and Records for each Defendant on the 15th day of each ensuing month until further order of the Court.

10. Defense counsel represented to the Court that Defendants do not have offices because they have been prohibited from working in their

Exhibit Page 12 of 15

offices since March 2020, and they have closed their offices, as they were serving no purpose. Defense counsel has also informed the Court that Defendants' financial information is maintained solely in electronic format and there are no hard-copy books and records. Thus, according to Defense counsel, there is nothing to see and inspect beyond that which Defendants will provide electronically.

11. As a result of the representations of Defense counsel set forth in Paragraph 10, Mr. Glade is hereby authorized to secure financial information for Defendants from January 1, 2020, to the present directly from the sources of information, including but not limited to Defendants' accountant identified by Defense counsel: Ruslan Magidov. Each Defendant, and their affiliates, agents, servants, employees, successors, assigns, representatives, and all persons in active concert with them are preliminarily restrained, enjoined, and prohibited from directly or indirectly interfering with Mr. Glade's and/or his designee's performance of their duties and obligations as set forth in this section of the Order.

12. Except for an act of willful misconduct or gross negligence, Mr. Glade and all persons engaged by or employed by Mr. Glade shall not

be liable for any loss or damage incurred with regard to their duties performed under this Order, or by any other person by reason of any act performed or omitted to be performed by Mr. Glade in connection with the discharge of Mr. Glade's duties and responsibilities in this matter.

13. Within fourteen (14) days of the Court's entry of this Order, or at a later time as agreed to by Bay Point, Defendant Smith shall be deposed by Bay Point's counsel. Mr. Smith's deposition shall be governed in all material respects by Fed. R. Civ. P. 30, including that such deposition may be taken by remote means, if necessary under the circumstances.

14. The Parties shall be entitled to initiate and engage in limited written discovery regarding the subject matter underlying Bay Point's Motion (Dkt. 3), including, but not limited to, serving requests for production of documents pursuant to Fed. R. Civ. P. 34, serving non-party subpoenas for production of documents pursuant to Fed. R. Civ. P. 45, and serving interrogatories pursuant to Fed. R. Civ. P. 33.

15. The Court is allowing Bay Point and Mr. Glade extensive expedited access to sensitive financial information and proprietary

information of Defendants. The Court's purpose in allowing the access is to enable Bay Point to investigate its claims and to recover the money it claims to be owed upon success of one or more of its claims. The Court expects that Defendant is likely to dispute some or all of Bay Point's claims. Defendant has indicated it may contest this Court's personal jurisdiction, and in any event, Defendant has not yet responded to the allegations in the Complaint with a responsive pleading.

16. Mr. Glade shall not, and shall not be required to, advance any of his own funds to execute the duties and obligations hereunder and/or to pay any expenses incurred by or on behalf of Mr. Glade in the performance of his duties herein, including delaying payment of his own invoices and/or those of his agents, contractors, employees, professionals, appraisers, vendors, and attorneys.

17. Pursuant to this Court's discretion, Bay Point shall not be required to post a bond or other security. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005).

18. A hearing is set before this Court in the United States Courthouse located at 75 Ted Turner Drive SW, Atlanta, Georgia 30303, Courtroom 1906, on March 24, 2021, at 10:00 a.m., at which time Bay Point, Defendants, and any other affected persons shall appear before the Court to provide the Court with any relevant updates regarding the status of the implementation of the relief set forth in this Order, any relevant information obtained during the implementation of the relief set forth in this Order, and to advise the Court whether a further continuance of the Motion (Dkt. 3) is warranted under the circumstances.

19. This Order and preliminary injunction shall continue in full force and effect until further order of this Court, and this Court retains jurisdiction of this matter for all purposes.

20. Any violation of the term(s) of this order will be punishable by contempt and other appropriate relief that this Court finds just and proper.

**SO ORDERED** this 11th day of February, 2021.



_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

- 14 -