1  TROUTMAN PEPPER HAMILTON SANDERS LLP
Luke N. Eaton (SBN 280387)

2    E-mail: luke.eaton@troutman.com
Two California Plaza

3  350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3427

4  Telephone: 213.928.9800
Facsimile: 213.928.9850

5

6  Harris B. Winsberg (admitted *pro hac vice*)
  E-mail: harris.winsberg@troutman.com

   Alexandra S. Peurach (admitted *pro hac vice*)
7    E-mail: Alexandra.Peurach@troutman.com

   Nathaniel T. DeLoatch (admitted *pro hac vice*)
8    E-mail: nathan.deloatch@troutman.com

   600 Peachtree Street, NE, Suite 3000
9  Atlanta, GA 30308
Telephone: 404.885.3000

10  Facsimile: 404.885.3900

11  Attorneys for Creditor
BAY POINT CAPITAL PARTNERS II, LP

12

13              UNITED STATES BANKRUPTCY COURT
              CENTRAL DISTRICT OF CALIFORNIA

14               LOS ANGELES DIVISION

15

16    In re                          | Case No. 2:21-bk-12542-BR

17  JONATHAN L. SMITH,               | Chapter 7

18        Debtor.                    | Adversary No. 2:21-ap-01116-BR

19  _____

20   BAY POINT CAPITAL PARTNERS II,  | **NOTICE OF MOTION AND MOTION**
   LP,                              | **FOR ENTRY OF DEFAULT JUDGMENT**
                                    | **ON NON-DISCHARGEABILITY OF DEBT**
21                                   | **PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**
        Plaintiff,                   | **AGAINST DEBTOR DEFENDANT**
22                                   | **JONATHAN L. SMITH; MEMORANDUM**
      v.                            | **OF POINTS AND AUTHORITIES IN**
                                    | **SUPPORT THEREOF**
23  JONATHAN L. SMITH,

24        Debtor-Defendant.

25  _____

26

27

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, TO THE DEBTOR AND THE DULY APPOINTED CHAPTER 7 TRUSTEE AND THEIR RESPECTIVE COUNSEL OF RECORD, AND TO THE UNITED STATES TRUSTEE:**

**PLEASE TAKE NOTICE** that on October 19, 2021 at 10:00 AM, in Courtroom 1668, the above-entitled Court, located at 255 E. Temple Street, Los Angeles, California 90012, will hold a hearing on Creditor and Plaintiff Bay Point Capital Partners II, LP ("**Bay Point**") Motion for Entry of Default Judgment (the "**Motion**") against the Debtor Jonathan L. Smith (the **"Debtor"**).

**PLEASE TAKE FURTHER NOTICE** that this Motion is filed pursuant to Federal Rule of Civil Procedure 55, made applicable to the above-captioned adversary action through Federal Rule of Bankruptcy Procedure 7055 and Local Bankruptcy Rule 7055-1, and is made on the grounds that the Debtor owes Plaintiff a "debt" within the meaning of the Bankruptcy Code; that such "debt" is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as a result of his intentional fraud; and that Plaintiff is legally entitled to a corresponding default judgment against the Debtor, following the Clerk's August 30, 2021 entry of default against the Debtor for his failure and refusal to answer the Complaint to Determine Non-Dischargeability of Debt filed by Plaintiff in the above-captioned adversary action (the **"Adversary Action"**).

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to the Motion must be filed with the Clerk of the United States Bankruptcy Court and served upon the Chapter 7 Trustee, the United States Trustee, and Plaintiffs' counsel at their respective addresses set forth in the upper left-hand corner of the first page of this Notice of Motion, by no later than fourteen (14) days before the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that the failure to file and serve a timely response to the Motion may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

This Notice of Motion and Motion are based upon the attached Memorandum of Points and Authorities, and the concurrently filed Declarations of Harris Winsberg, Kevin Brawner, John Isbell, and Marshall Glade.

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1

2
**WHEREFORE**, Plaintiff respectfully requests that the Court grant the Motion and enter a

non-dischargeable default judgment against the Debtor in the total amount of $3,541,335.87.

3

4
Dated:          September 15, 2021                    TROUTMAN PEPPER HAMILTON
                                                       SANDERS LLP

5

6                                                      By: */s/ Nathaniel DeLoatch*
                                                              Luke N. Eaton (SBN 280387)

7                                                             Two California Plaza
                                                              350 S. Grand Avenue, Suite 3400

8                                                             Los Angeles, CA 90071-3427
                                                              Telephone: 213.928.9800

9                                                             Facsimile: 213.928.9850
                                                              luke.eaton@troutman.com

10
                                                              -and-

11
                                                              Harris B. Winsberg (admitted *pro hac vice*)

12                                                            Alexandra S. Peurach (admitted *pro hac vice*)
                                                              Nathaniel T. DeLoatch (admitted *pro hac vice*)

13                                                            600 Peachtree Street, NE, Suite 3000
                                                              Atlanta, GA 30308

14                                                            Telephone: 404.885.3000
                                                              Facsimile: 404.885.3900

15                                                            harris.winsberg@troutman.com
                                                              alexandra.peurach@troutman.com

16                                                            nathan.deloatch@troutman.com

17                                                     *Attorneys for Creditor and Plaintiff Bay Point*
                                                       *Capital Partners II, LP.*

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

**TABLE OF CONTENTS**

                                                                                            **Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.     BACKGROUND ........................................................................................................ 2

        A.      Summary of the Facts Alleged in the Non-Dischargeability Complaint ............... 2

                1.      Bay Point's Business ................................................................................. 2

                2.      The Debtor's Fraudulent Inducement of The Loan ................................... 2

                        a.      The Purported Short-Term Accounts Receivable ......................... 3

                        b.      Non-Disturbance, Standby, and Subordination Agreements ......... 4

                3.      The Loan Documents ................................................................................ 6

                4.      The Debtor's Defaults ............................................................................... 7

                        a.      The Debtor's Further Concealment of His Fraud ......................... 7

                        b.      The Agreements and Debtor's Acknowledgment of Debt ............. 7

                5.      The District Court Action and the Debtor's Plea Agreement .................... 8

                        a.      The District Court's Finding of Fraud ......................................... 8

                        b.      The Debtor's Agreement to Plead Guilty to Wire Fraud .............. 11

        B.      Procedural Background ........................................................................................ 11

III.    ARGUMENT ........................................................................................................... 13

        A.      Legal Standard Governing the Entry of Default Judgments ................................ 13

        B.      Bay Point is Entitled to Default Judgment on its Non-Dischargeability
                Claim .................................................................................................................. 14

        C.      The Court Should Determine the Non-dischargeability of Smith's Debt
                Under § 523(a)(2)(A) to be $3,541,335.87 .......................................................... 16

                1.      Bay Point is Entitled to Recover $3,176,944.44 in Principal,
                        Interest and Late Fees Owing Under the Loan Documents ..................... 16

                2.      Bay Point is Also Entitled to Its Reasonable Attorneys' Fees and
                        Costs Under the Guaranty and Forbearance Agreements ........................ 19

                        a.      The Relevant Contract Provisions Encompass Bay Point's
                                Section 523(a)(2)(A) Claim Against the Debtor ......................... 20

                        b.      Bay Point Is Entitled to Recover $364,391.43 in Attorneys'
                                Fees and Costs .......................................................................... 22

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

**TABLE OF CONTENTS**
**(continued)**

**Page**

IV.    CONCLUSION .............................................................................................................. 24

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Barrack*,
  217 B.R. 598 (B.A.P. 9th Cir. 1998) ...................................................................................15

*Bay Point Capital Partners II, LP v. Hoplite, Inc. et al.*,
  No. 1:21-cv-00375-MLB (N.D. Ga.) ............................................................................ *passim*

*In re Brack*,
  No. 10-26347-D-7, 2016 WL 5793655 (Bankr. E.D. Cal. Sept. 30, 2016) ..............................12

*In re Brown*,
  No. ADV 08A00936, 2009 WL 2461241 (Bankr. N.D. Ill. Aug. 11, 2009) ...........................19

*Cohen v. De La Cruz*,
  523 U.S. 213 (1998) .................................................................................................. *passim*

*In re Cossio*,
  163 B.R. 150 (B.A.P. 9th Cir. 1994), *aff'd*, 56 F.3d 70 (9th Cir. 1995) ...............................13

*In re Cottle*,
  No. 2:09-BK-28307-GBN, 2016 WL 6081030 (B.A.P. 9th Cir. Oct. 17, 2016) ...............17, 18

*Davis v. Beling*,
  128 Nev. 301 (2012) ...............................................................................................20, 21

*In re Davis*,
  595 B.R. 818 (Bankr. C.D. Cal. 2019) ...............................................................................20

*In re Del Valle*,
  577 B.R. 789 (Bankr. C.D. Cal. 2017) ...............................................................................17

*In re Dinan*,
  448 B.R. 775 (B.A.P. 9th Cir. 2011) ...............................................................................20, 22

*Dobron v. Bunch*,
  125 Nev. 460 (2009) ......................................................................................................20

*In re El-Atari*,
  No. 09-14950-BFK, 2012 WL 1835126 (Bankr. E.D. Va. May 18, 2012) ...............................1

*In re Estate of Marcos Human Rights Litig.*,
  978 F.2d 493 (9th Cir. 1992) ............................................................................................13

*Flamingo Realty, Inc. v. Midwest Dev., Inc.*,
  110 Nev. 984 (1994) ......................................................................................................20

*In re Heckenkamp*,
  110 B.R. 1 (Bankr. C.D. Cal. 1989) (Russell, J.) ................................................................15

*In re Hostetter*,
  320 B.R. 674 (Bankr. N.D. Ind. 2005) ...............................................................................17

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

- iii -

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

*In re Hung Tan Pham*,
   250 B.R. 93 (9th Cir. BAP 2000) ....................................................................................20

*In re Hurtado*,
   2015 WL 2399665 (Bankr. E.D. Cal. May 18, 2015) ...............................................16, 17, 19

*Ishiyama v. Glines*,
   No. CV 16-07725-AB (ASX), 2018 WL 3815034 (C.D. Cal. July 25, 2018) ...........................17

*In re Jaques*,
   615 B.R. 608 (Bankr. D. Idaho 2020) ..............................................................................20

*In re Johnson*,
   313 B.R. 119 (Bankr. E.D.N.Y. 2004) ..............................................................................13

*In re Kennedy, No. ADV.08-00537-GBN*,
   2011 WL 1098463 (B.A.P. 9th Cir. Mar. 9, 2010) ..............................................................13

*In re Manning*,
   No. ADV 6:12-1149, 2013 WL 4428761 (B.A.P. 9th Cir. Aug. 19, 2013) ...............................13

*In re Martin*,
   No. 2:17-BK-16996-ER, 2019 WL 3025248 (Bankr. C.D. Cal. July 10, 2019),
   *aff'd*, 2021 WL 825142 (B.A.P. 9th Cir. Mar. 3, 2021) ......................................................22

*In re Matkins*,
   605 B.R. 62 (Bankr. E.D. Va. 2019) ................................................................................18

*In re McGee*,
   359 B.R. 764 (B.A.P. 9th Cir. 2006) ................................................................................13

*McLane v. Abrams*,
   2 Nev. 199 (1866) .......................................................................................................17

*In re Mohammed*,
   No. 2:20-AP-01168-ER, 2021 WL 2373632 (Bankr. C.D. Cal. June 9, 2021) .................13, 16

*In re Morris*,
   No. 15-10860(1)(7), 2018 WL 1940382 (Bankr. W.D. Ky. Apr. 23, 2018) ............................18

*Musser v. Bank of Am.*,
   114 Nev. 945 (1998) ...................................................................................................21

*Myers v. LHR, Inc.*,
   543 F. Supp. 2d 1215 (S.D. Cal. 2008) ............................................................................13

*Pardee Homes of Nevada v. Wolfram*,
   135 Nev. 173 (2019) ...................................................................................................21

*ParksA Am., Inc. v. Harper*,
   132 Nev. 1015 (2016) ..................................................................................................21

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................................................................13

*PharMerica Mountain, LLC v. RCSRP Corp.*,
No. 220CV00732JADEJY, 2021 WL 982314 (D. Nev. Mar. 16, 2021) ..................................17

*In re Piening*,
No. A09-00278-DMD, 2010 WL 7785860 (Bankr. D. Alaska Nov. 8, 2010) .........................18

*In re Rifai*,
604 B.R. 277 (Bankr. S.D. Tex. 2019)..............................................................................17, 18

*Robert Dillon Framing, Inc. v. Canyon Villas Apartment Corp.*,
129 Nev. 1102 (2013) ......................................................................................................20, 21

*In re Saccheri*,
No. ADV 09-1273, 2012 WL 5359512 (B.A.P. 9th Cir. Nov. 1, 2012), *aff'd*,
599 F. App'x 687 (9th Cir. 2015) ................................................................................................18

*In re Salazar*,
No. AP 17-02005, 2019 WL 267777 (Bankr. D. Utah Jan. 18, 2019)....................................18

*Semenza v. Caughlin Crafted Homes*,
111 Nev. 1089 (1995) ....................................................................................................................20

*Shuette v. Beazer Homes Holdings Corp.*,
124 P.3d 530 (Nev. 2005) ..............................................................................................................22

*In re Slyman*,
234 F.3d 1081 (9th Cir. 2000)........................................................................................................14

*In re St. Laurent*,
991 F.2d 672 (11th Cir. 1993) .......................................................................................................24

*In re Sun*,
535 B.R. 358 (B.A.P. 10th Cir. 2015)....................................................................................17, 19

*In re Tran*,
301 B.R. 576 (Bankr. N.D. Cal. 2003)...........................................................................................22

*United States of America v. Jonathan Lee*
*Smith*, No. 2:21-cr-00272-JFW (C.D. Cal.)............................................................................1, 2, 11

*In re Urbina*,
519 B.R. 694 (Bankr. N.D. Ohio 2014) ........................................................................................13

*In re Viles*,
No. 08-41203-7, 2010 WL 299246 (Bankr. D. Kan. Jan. 19, 2010)...........................................18

*Westgate Planet Hollywood Las Vegas, LLC v. Tutor-Saliba Corp.*,
133 Nev. 1092, 421 P.3d 280 (2017) ...........................................................................................17

*In re Zamora*,
No. 2:17-BK-22698-BB, 2020 WL 1272257 (Bankr. C.D. Cal. Mar. 16, 2020) ...................12

**Statutes**

11 U.S.C. § 101(5) & (12)...............................................................................................................16

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

11 U.S.C. § 523 .................................................................................................13, 16

11 U.S.C. § 523(a)(2)(A) ................................................................................ *passim*

28 U.S.C. § 1961 ........................................................................................................17

50 U.S.C. App. § 521 ..................................................................................................1

Bankruptcy Code Chapter 7 ......................................................................................11

Nev. Rev. Stat. § 17.130(1) .......................................................................................17

Nev. Rev. Stat. § 18.010(1) .......................................................................................20

Nev. Rev. Stat. § 18.010(4) .......................................................................................20

Nev. Rev. Stat. § 42.005 ............................................................................................24

Nev. Rev. Stat. § 99.050 ............................................................................................17

Racketeer Influenced and Corrupt Organizations Act (RICO) ...........................8, 22, 23

**Other Authorities**

Fed. R. Bankr. P. 7004 ...............................................................................................12

Fed. R. Bankr. P. 7055 ...............................................................................................13

Fed. R. Civ. P. 55 .......................................................................................................13

Local Bankruptcy Rule 7055-1 ..................................................................................13

Local Bankruptcy Rule 7055-1(a)..............................................................................12

Local Bankruptcy Rule 7055-1(b)(1)((B)-(C) ............................................................1

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2          This Motion seeks the entry of a default judgment against Debtor-Defendant Jonathan L.

3    Smith ("**Debtor**")[1] that the obligations owed by Debtor to Plaintiff and Creditor Bay Point

4    Capital Partners II, LP ("**Bay Point**") are excepted from discharge and thus "non-dischargeable"

5    under 11 U.S.C. § 523(a)(2)(A) because of the Debtor's intentional fraud committed against Bay

6    Point.  As established by the controlling facts and law of this case, the existence and non-

7    dischargeability of this debt is beyond dispute and entitles Bay Point to entry of judgment on its

8    claim.

9    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

10         This Motion arises out of the Debtor's fraudulent procurement of a $2 million short-term

11   "bridge-loan" (the "**Loan**") from Bay Point through a series of false promises, intentional

12   misrepresentations, concealment of material facts, and falsification of documents.  The Debtor is

13   currently in default for his failure and refusal to answer or otherwise respond to the Complaint to

14   Determine Non-Dischargeability of Debt, filed by Bay Point in the above-captioned adversary

15   action (the **"Adversary Action"**) over three months ago (the **"Non-Dischargeability**

16   **Complaint"**).  Bay Point now seeks entry of a default judgment, finding the Debtor's outstanding

17   obligations under the Loan are non-dischargeable.

18         As detailed below, the existence and non-dischargeability of the debt are established and

19   confirmed by the Non-Dischargeability Complaint's well-pleaded allegations, which are

20   supported by the overwhelming documentary evidence appended thereto, including oral and

21   written findings in a parallel action pending against the Debtor in the United States District Court

22   for the Northern District of Georgia, *Bay Point Capital Partners II, LP v. Hoplite, Inc. et al.*, No.

23   1:21-cv-00375-MLB (N.D. Ga.) (the "**District Court Action**"), and in a criminal proceeding

24   against the Debtor in the United States District Court for the Central District of California, *United*

25   _____

26   [1] The Debtor is not an infant or an incompetent person, nor is he currently on active duty in the armed
forces of the United States.  *See* Local Bankruptcy Rule, Rule 7055-1(b)(1)((B)-(C); *see also* Declaration

27   of Harris Winsberg ("Winsberg Decl."), ¶ 16 & Ex. C (attached hereto as **Exhibit 1**).  The Court may
consider an attorney affidavit in determining compliance with 50 U.S.C. App. § 521.  *See In re El-Atari*,

28   No. 09-14950-BFK, 2012 WL 1835126, at *2 (Bankr. E.D. Va. May 18, 2012).

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1   *States of America v. Jonathan Lee* Smith, No. 2:21-cr-00272-JFW (C.D. Cal.) (the "**Criminal**

2   **Proceeding**"), in which the Debtor has agreed to plead guilty to wire fraud based on the same

3   underlying conduct.  Those allegations and that evidence establish that the Debtor engaged in an

4   elaborate scheme to fraudulently induce Bay Point to loan $2 million to the Debtor's companies,

5   bankrupt defendant Hoplite, Inc. ("**Hoplite**") and Hoplite Entertainment, Inc. ("**Hoplite**

6   **Entertainment**") (collectively, the "**Hoplite Entities**"), and then to forbear from foreclosing on

7   the Loan after the borrowers and the Debtor defaulted.  Accordingly, Bay Point has more than

8   plausibly alleged a claim that the Debtor's debt is not dischargeable, and the Court should enter

9   default judgment on that claim.

10   **II.    BACKGROUND**

11        **A.  Summary of the Facts Alleged in the Non-Dischargeability Complaint.**

12        The factual allegations and documentary evidence attached to Bay Point's Non-

13   Dischargeability Complaint expose the Debtor's fraudulent scheme to induce Bay Point to make

14   the Loan by knowingly misrepresenting the amount and timing of short-term accounts receivable

15   that the Debtor offered as security for the Loan and other creditors' purported agreement to

16   subordinate their own debts to Bay Point, including through the presentation of falsified

17   documents to Bay Point.

18        **1.    Bay Point's Business**

19        Bay Point is an Atlanta-based, privately held investment fund specializing in short-term,

20   secured lending to small- and medium-sized businesses that rarely have access to traditional

21   sources of capital.  (Non-Dischargeability Complaint ("Compl.") ¶ 5).  On September 30, 2020,

22   Bay Point entered into a Loan and Security Agreement (the "**Loan Agreement**") with the Hoplite

23   Entities.  (*Id.* ¶ 22 & Ex. G).   Under the Loan Agreement, Bay Point made a $2 million bridge

24   loan with a 3-month maturity date.  (*Id.*)  The Loan was guaranteed by the Debtor, who controls

25   the Hoplite Entities.  (*Id.* ¶¶ 7, 24 & Ex. I).

26        **2.    The Debtor's Fraudulent Inducement of The Loan**

27        To obtain the Loan, a broker named Walter Josten ("Josten"), who was aware of Bay

28   Point's interest in investing in the media and production industry, approached Bay Point in

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

August 2020.  (*Id.* ¶ 8).    Josten told Bay Point about two closely-held, California media companies under the Debtor's direct control and management—the Hoplite Entities—looking for $1–2 million in short-term financing.  (*Id.* ¶¶ 9, 11).    Josten further informed Bay Point that the Debtor was willing to borrow against the Hoplite Entities' then-existing short-term accounts receivable of $3,438,000.  (*Id.* ¶ 11).

### a.    The Purported Short-Term Accounts Receivable

Bay Point requested documentation validating the Hoplite Entities' purported $3,438,000 receivables.  (*Id.* ¶ 12).    The Debtor, through Josten, provided Bay Point (1) a License Agreement between Hoplite Entertainment and Big Media Holdings LLC ("**Big Media Holdings**") evidencing a purported receivable of $950,000; (2) a License Agreement between Hoplite Entertainment and Screen Media Ventures, LLC ("**Screen Media Ventures**") evidencing a purported receivable of $1,488,000; and (3) an Acquisition Agreement between Hoplite and Ineomeida, Inc., d/b/a Fight Channel World Network ("**Fight Channel**") evidencing a purported receivable of $1,000,000.  (*Id.*).    Over the next month, the Debtor repeatedly affirmed the validity of those agreements to Bay Point, and he reiterated that each receivable would be due and payable before the Loan's maturity date.  (*Id.* ¶¶ 13–14).    Nevertheless, as a pre-condition to closing the Loan, Bay Point asked the Debtor, in writing, to "outline the expected payment period for each agreement."  (*Id.* ¶ 14 & Ex. A).    The Debtor responded, also in writing, that Big Media Holdings was "set to pay" its purported $950,000 indebtedness "on Oct 15th," that Fight Channel would pay its purported $1,000,000 indebtedness "by the 15th of November," and that Screen Media Ventures was "set to pay" its purported $1,488,000 indebtedness "on the 30th of Oct."  (*Id.*).

As it turns out, however, at least two of these agreements were falsified, and no such accounts receivable were due as outlined in the agreements or by the Debtor.    After making the Loan and learning of the Debtor's fraudulent scheme, Bay Point contacted Screen Media Ventures to obtain a copy of its License Agreement with Hoplite Entertainment.  (*Id.* ¶¶ 74–75).    The version of that agreement provided by Screen Media Ventures, while nearly identical to the one supplied by the Debtor, differed in two significant ways: there was no requirement of advance payments and no mention of the $1,488,000 monetary advance.  (*Id.* ¶ 76 & Ex. N).    The

- 3 -

Debtor fraudulently added those terms to the version of the agreement he provided to Bay Point to make it appear as if Screen Media Ventures had agreed to advance nearly $1.5 million when it had not; and, what's more, the Debtor forged Screen Media Ventures' signature on the falsified documents. (*Id.* ¶ 77). Likewise, the Debtor fraudulently modified material terms of the License Agreement with Big Media Holdings. As confirmed by Big Media Holdings, the Debtor doctored that agreement to overstate the receivable—in reality, a license fee of $11,000—by $939,000. (*See id.* ¶¶ 81–83 & Ex. O).

The Debtor misrepresented the receivables purportedly due and owing to the Hoplite Entities and fraudulently modified material aspects of the License Agreements that he provided to Bay Point to induce Bay Point to make the $2 million Loan, under the false pretenses that Bay Point would have "security" in the form of priority rights to receivables that were significantly exaggerated or did not exist. (*Id.* ¶¶ 78, 84).

**b.      Non-Disturbance, Standby, and Subordination Agreements**

The Debtor also falsely promised and intentionally misrepresented to Bay Point that its Loan would take priority over that of all other creditors. Before making the Loan, as part of its due diligence process, Bay Point investigated the Debtor's and Hoplite Entities' debts and discovered several liens filed against each of them. (*Id.* ¶ 15). Among their existing creditors were Columbia State Bank, to which the Hoplite Entities are indebted under a Business Loan Agreement dated April 21, 2020 (the "**SBA Loan**"); Porta Pellex LLC, to which the Hoplite Entities are indebted under Loan Agreements dated April 17, 2019 and March 22, 2020 (the "**Porta Pellex Loans**"); and XXIII Capital Limited, to which Hoplite Entertainment is indebted under a Facility Agreement dated December 9, 2016 (the "**XXIII Capital Loan**"). (*Id.* ¶ 16). Thus, to make the Loan, Bay Point required the Debtor to provide documents from these and other secured creditors, including subordination agreements, as well as express written consent from Columbia State Bank. (*Id.* ¶ 17). Bay Point also required the Debtor to provide signed non-disturbance agreements from Big Media Holdings, Fight Channel, and Screen Media Ventures, directing them to send all forthcoming payments from the Hoplite Entities' purported accounts receivable directly to Bay Point. (*Id.* ¶ 21).

- 4 -

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1    In late September, the Debtor sent to Bay Point what he falsely represented to be these

2    required documents. (*Id.* ¶¶ 18–21). Specifically, the Debtor represented to have sent: (a) the

3    SBA Loan Documents; (b) signed standby agreements from five creditors, including Columbia

4    State Bank, Porta Pellex LLC, and XXIII Capital, in which those creditors agreed to subordinate

5    their loans to Bay Point's Loan; (c) Columbia State Bank's written consent to the execution of the

6    Loan; and (d) signed non-disturbance agreements from Big Media Holdings, Fight Channel, and

7    Screen Media Ventures. (*Id.* ¶¶ 18–21 & Exs. A–F). Based in part on the Debtor purportedly

8    providing this required documentation, Bay Point agreed to make the Loan. (*Id.* ¶ 22.)

9    Bay Point would later discover that these documents, specifically designed to protect Bay

10    Point in making the Loan, were also fake. Specifically, in February 2021, Bay Point discovered

11    the Debtor's deception through direct communications with representatives of Columbia State

12    Bank, Porta Pellex LLC, and XXIII Capital. (*Id.* ¶¶ 86–96). Columbia State Bank confirmed that

13    the Standby Creditor's Agreement provided to Bay Point by the Debtor was "falsely fabricated,"

14    lacked Columbia Bank's signature, included unauthentic copies of the SBA Loan documents, and

15    was "not part of the [SBA Loan]," "not authorized by Columbia Bank, and [] ineffective." (*Id.*

16    ¶¶ 86–88 & Ex. P). As a result, Columbia State Bank maintained that its "perfected security

17    interest" remained "senior" to Bay Point's. (*Id.* ¶ 89.) Similarly, Porta Pellex stated it had "never

18    seen" the standby agreement the Debtor provided to Bay Point. (*Id.* ¶¶ 90–91 & Ex. Q). Nor did

19    Porta Pellix sign it; as Porta Pellex observed, the fabricated agreement was apparently signed by

20    "someone . . . without [Porta Pellex's] knowledge or consent." (*Id.*) And the same was true for

21    the documents purportedly signed by XXIII Capital: "th[ose] documents," according to XXII

22    Capital, "are falsified," and "[e]ven the purported 'Loan Agreement' [produced by the Debtor]

23    bears no resemblance to the robust and extensive loan documents [actually] signed by the

24    parties . . . ." (*Id.* ¶¶ 92–94 & Ex. R). Additionally, the Debtor had falsified the non-disturbance

25    agreements from Screen Media Ventures and Big Media Holdings. (*Id.* ¶¶ 79, 85).

26    The Debtor fabricated these documents, then provided them to Bay Point, in order to

27    fraudulently induce Bay Point to enter into the Loan Agreement. (*Id.* ¶ 95). Indeed, these "duly

28    executed" documents were a condition precedent to the Loan Agreement to, among other things,

provide Bay Point "a valid, first priority perfected security interest in the presently-existing Collateral." (*Id.* ¶¶ 95–99 & Ex. G, §§ 3.1(a), 4.1).  Bay Point relied on these falsified documents to its detriment in deciding to make the Loan. (*Id.* ¶ 96).

### 3.      The Loan Documents

Relying on the Debtor's foregoing promises and intentional misrepresentations, and unaware of the material facts he purposefully concealed, Bay Point agreed to execute the Loan Agreement on September 30, 2020. (Compl. ¶ 22 & Ex. G).  Under the Loan Agreement, Bay Point agreed to make a $2 million bridge loan to the Hoplite Entities with interest accruing monthly, and full payment due on the maturity date of December 30, 2020. (*Id.*).  In connection with the Loan Agreement, the Debtor concurrently executed a promissory note and a Guaranty Agreement, unconditionally guaranteeing all payment and performance obligations owed by the Hoplite Entities "in order to induce [Bay Point] to enter into and make [the L]oan[.]" (*Id.* ¶¶ 23–24 & Exs. H, I; *see id.* ¶¶ 36–39).

Consistent with the Debtor's prior false promises, intentional misrepresentations, and concealment of material facts, the Loan Agreement provides that the receivables evidenced by the License Agreements the Debtor supplied would serve as "Specified Collateral" on the Loan. (*Id.* ¶ 29).  And the Loan Agreement required the Debtor to (a) obtain duly-executed "Non-Disturbance Agreements" from Big Media Holdings, Fight Channel, and Big Screen Media Ventures, and "Third Party Subordination Agreements" from then-existing creditors, including XXIII Capital Limited and Porta Pellex, LLC, (*id.* ¶¶ 27, 29, 31–32 & Ex. G at 5, 7, 8, §§ 2.11(b), 3.1(a), 5.8); (b) provide "evidence of the SBA Lender's consent to the Loan and the Liens" to Bay Point, which included a first priority interest in certain of the Hoplite Entities' existing and later acquired collateral (*id.* ¶¶ 30, 33 & Ex. G §§ 3.1(k), 4.1); and (c) certify that all agreements are valid, binding, and enforceable (*id.* ¶ 28 & Ex. G § 5.3).  The Loan Agreement also granted Bay Point a valid, first priority security interest in the Hoplite Entities' presently existing and later acquired Collateral, including the Specified Collateral. (*Id.* ¶ 30 & Ex. G, § 4.1).  Section 6.1(b) of the Loan Agreement also required the Hoplite Entities to provide Bay Point with the companies' monthly financial statements. (*Id.* ¶ 34 & Ex. G § 6.1(b)).

- 6 -

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

#### 4.    The Debtor's Defaults

Neither the Hoplite Entities nor the Debtor made the first two regularly scheduled payments of accrued interest due under the Loan Agreement.  (Compl. ¶¶ 40–43).  Nor, despite Bay Point's repeated requests, would they provide monthly financial statements.  (*Id.* ¶ 44).  The Debtor has therefore been in default since October 31, 2020.  (*Id.* ¶¶ 40–44).

##### a.    The Debtor's Further Concealment of His Fraud

After Bay Point threatened to pursue its post-default rights under the Loan Agreement, and in furtherance of his intentional fraud, the Debtor knowingly and purposefully provided Bay Point with phony financial documents and related misrepresentations.  Specifically, on November 17, 2020, the Debtor emailed Bay Point what he represented to be an earlier correspondence from Seth Needle, a Screen Media Ventures executive, regarding payment of the purported account receivable.  (Compl. ¶ 61 & Ex. L).  That email showed the apparent confirmation of an outgoing Wells Fargo automated clearing house (ACH) transfer from Screen Media Ventures to Bay Point—as contemplated under the Loan Agreement—of $1,488,000—the precise amount Screen Media Ventures purportedly owed to Hoplite Entertainment under the fake License Agreement provided by the Debtor.  (*Id.* ¶¶ 58–62 & Ex. L; *see also* Ex. G § 2.11).  But Bay Point never received those funds.  (*Id.* ¶ 65).  So, on December 1, 2020, Bay Point contacted Mr. Needle directly, and Mr. Needle confirmed he did not "send any such email" to the Debtor, observing it appeared to be "a scam." (*Id.* ¶¶ 66–68).

While Bay Point was busy investigating this transfer (and unravelling the Debtor's scheme), the Debtor doubled down.  On November 20, 2020, he sent Bay Point another funds transfer confirmation, this time showing a wire transfer of $100,000, initiated by him, to Bay Point.  (*Id.* ¶¶ 70–71 & Ex. M).  Bay Point never received those funds either.  (*Id.* ¶¶ 72–73).

##### b.    The Agreements and Debtor's Acknowledgment of Debt

The Debtor's defaults entitled Bay Point to pursue all the rights and remedies afforded to it under the Loan Documents and applicable law.  (Compl. ¶ 45 & Ex. G § 9).  The Debtor, however, pleaded for Bay Point to refrain from exercising those rights; on December 4, 2020, Bay Point on the one hand, and the Debtor and Hoplite Entities on the other, executed a

Forbearance Agreement, under which the Debtor "acknowledge[d] and confirm[ed]" his liability for the total outstanding indebtedness owed to Bay Point under the Loan Agreement, which was $2,235,238.89 at the time, including applicable interest, late fees, and legal fees. (*Id.* ¶¶ 46–49 & Ex. J). The Forbearance Agreement also provided that the Debtor would be liable to Bay Point for Bay Point's "expenses and costs incurred in the enforcement of [its] rights under the Loan Documents or applicable law, including, without limitation, reasonable attorneys' fees." (*Id.* Ex. J § 8). Yet, again, the Debtor failed to satisfy his payment obligations and went into default. (*Id.* ¶ 50.)

Hoping that the parties could still create a workable and realistic solution for the Debtor to repay his debt, on December 21, 2020, Bay Point executed a second Forbearance Agreement with the Debtor and the Hoplite Entities. (*Id.* ¶ 51 & Ex. K). In doing so, the Debtor acknowledged his liability for the total outstanding indebtedness owed to Bay Point under the Loan Agreement, which was $2,517,618.89 at that time, including applicable interest, late fees, and legal fees. (*Id.* ¶ 52 & Ex. K at 2). This second Forbearance Agreement likewise included the attorneys' fees and costs provision. (*Id.* Ex. K § 8). Ultimately, the Debtor made none of the required payments under the second Forbearance Agreement either and defaulted again. (*Id.* ¶¶ 52–54; *see id.* Ex. K at 2, §§ 3(a)–(b), 9).

To date, neither the Hoplite Entities nor the Debtor have repaid any of their outstanding debt to Bay Point, including the principal, interest, late fees, attorneys' fees, and related costs and expenses owed to Bay Point. (*Id.* ¶ 55).

### 5.    The District Court Action and the Debtor's Plea Agreement

#### a.    The District Court's Finding of Fraud

After discovering the Debtor's fraud, on January 22, 2021, Bay Point filed a complaint against the Debtor and the Hoplite Entities in the District Court Action based on their fraudulent scheme to obtain the Loan, fraudulent conduct to persuade Bay Point not to foreclose on the defaulted Loan, and failure to make any payments due to Bay Point under Loan. (*Id.* ¶ 101). Bay Point asserted claims for fraudulent misrepresentation, breaches of contract, and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). (*Id.*). Bay Point also moved, on

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

- 8 -

an expedited basis, for the appointment of a receiver to protect Bay Point's security interests in the Collateral from any further acts of fraud by the Debtor and the Hoplite Entities.  (*Id.* ¶ 102).

On February 10, 2021, the District Court held an evidentiary hearing on Bay Point's motion for the appointment of a receiver.  (*Id.* ¶ 103).  Considering the same facts currently before this Court, the District Court found there to be "lots of evidence of fraud" and "plenty of evidence that that the [Debtor] engaged in fraudulent activity in order to receive the $2,000,000 loan."  (Compl. ¶ 104 & Ex. T at 123:11, 138:5–7).  The District Court recounted the following specific "evidence of fraud":

- the falsified License Agreement provided by the Debtor to Bay Point that Screen Media Ventures confirmed was materially different from the real License Agreement, (*id.* ¶ 105 & Ex. T at 123:17–21, 124:3–4);

- the Debtor's "fraudulent misrepresentation" to Bay Point regarding the imminence of receivables from Big Media Holdings, Screen Media Ventures, and Fight Channel, (*id.* ¶ 106 & Ex. T at 123:22–124:2);

- the falsified ACH and wire transfer notification emails, (*id.* ¶ 107 & Ex. T at 124:5–6);

- the purported SBA Loan Standby Agreement shown at the hearing to be falsified and bearing a forged signature, (*id.* ¶ 108 & Ex. T at 124:7–14); and

- the Debtor's refusal to provide access to the Hoplite Entities' bank statements, (*id.* ¶ 110 & Ex. T at 125:9–11).

The District Court thus held "that Bay Point had shown fraudulent activity occurred, most notably by showing Defendants Hoplite entities and [the Debtor] fraudulently caused Bay Point to believe Hoplite was already legally entitled [under existing Licensing Agreements] to payments totaling about $1,963,000 . . . , that receipt of this money was imminent, and that the Hoplite Entities were on the cusp of delivering content to [Fight Channel] and expected payment of approximately $1,000,000 from that company."  (*Id.* ¶ 114 & Ex. U at 2–4 & n.3).  The District Court further observed that considering these facts, were the Debtor at the hearing "he might be taking the Fifth."  (*Id.* ¶ 111 & Ex. T at 125:18–19).

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

- 9 -

1    The District Court followed the hearing with a written order making certain findings of

2    fact and setting forth the terms of a preliminary injunction (the "**Injunction Order**").[2]  (Compl. ¶

3    113 & Ex. U).  On the Debtor's fraudulent conduct, "[t]he Court concluded that Bay Point had

4    shown fraudulent activity occurred, most notable by showing Defendants Hoplite entities and [the

5    Debtor] fraudulently caused Bay Point to believe Hoplite was already legally entitled to payments

6    totaling approximately $1,963,000 from the agreements with Screen Media Ventures, LLC

7    ('Screen Media') and Big Media Holdings, LLC ('Big Media'), that the receipt of that money was

8    imminent, and that Hoplite was on the cusp of delivering content to Ineomeida, Inc., d/b/a Fight

9    Channel World Network ('Fight Channel') and expected payment of approximately $1,000,000

10   from that company within forty-five days. The Court found Bay Point's witness (Chandler

11   Rierson) credible and outlined additional evidence of Defendants' fraudulent activity beginning in

12   at least late September 2020 and continuing into recent weeks." (*Id.* ¶ 114 & Ex. U at 2-3).  The

13   District Court also reiterated that "Hoplite and [the Debtor] deceived Bay Point into believing

14   Columbia State Bank had subordinated its SBA loan claim to Bay Point's loan." (*Id.* at 3 n.3).

15   Due to the Debtor's fraudulent conduct, the District Court, with the agreement of the

16   parties, "agreed to impose an injunction to protect Hoplite's accounts receivable and assets from

17   pilfering or waste while the case proceeds." (*Id.* at 4).  The District Court ordered Bay Point's

18   designee – Marshall Glade – to carry out the terms of the Injunction Order, including directing the

19   Debtor to turn over certain accounts receivable to Mr. Glade, restraining Screen Media Ventures,

20   Big Media and Fight Channel from making payments to anyone other than Mr. Glade, and

21   requiring the Debtor to turn over Books and Records (as defined in the Injunction Order) to Mr.

22   Glade. (*Id.* at 5-10).  The District Court also ordered the Debtor to sit for a deposition. (*Id.* at 12).

23   On March 24, 2021, the District Court held a renewed hearing on Bay Point's

24   Receivership Motion to determine the sufficiency of the interim Injunction Order. (*Id.* ¶ 115 &

25   Ex. V).  After finding that the Debtor's testimony was necessary to properly consider the Motion

26   _____

27   [2] The District Court entered the Injunction Order in lieu of appointing a receiver to ensure that no less
     severe equitable remedy would suffice before such an appointment.  (Compl. Ex. U at 3-4).  The Court
     determined to revisit the Motion if the "interim and less sever equitable remedy" of the Injunction Order

28   "fails to provide the necessary protection."  (*Id.* at 4).

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

and the Debtor's compliance with the Injunction Order, the Court adjourned the hearing, rescheduled it for March 31, 2021, and ordered the Debtor to appear in person at that hearing. (*Id.* Ex. V).

On the evening of March 30, 2021, the Debtor and Hoplite Entertainment filed respective petitions for bankruptcy, and the District Court held the evidentiary hearing on March 31, 2021 only as to Hoplite, Inc. (*Id.* ¶ 117 & Ex. W). Recognizing the Debtor's failure to comply with the Injunction Order or to appear in person at the hearing, the District Court granted Bay Point's Receivership Motion as to Hoplite, Inc. only, which then filed for bankruptcy later that day. (*Id.* ¶¶ 117-120 & Exs. W & X).

### b.    The Debtor's Agreement to Plead Guilty to Wire Fraud

As a direct result of the Debtor's scheme to defraud Bay Point out of $2 million, on June 8, 2021, the United States filed an information, beginning the Criminal Proceeding and formally charging the Debtor with wire fraud. (*Id.* ¶¶ 122–23 & Ex. Y). The Debtor has executed a Plea Agreement in connection with the Criminal Proceeding, thereby admitting that he "is, in fact, guilty" of wire fraud and, hence, the conduct described above (the **"Plea Agreement"**). (*Id.* ¶¶ 124 & Ex. Z). Specifically, the Debtor has acknowledged that he "***knowingly***" and "with the ***intent to defraud***" made misrepresentations to Bay Point and provided it with fabricated documents—i.e., the phony licensing agreements, standby agreements, and ACH transfer records—and "[a]s a result . . . caused at least $2 million in losses to [Bay Point]." (*Id.* ¶ 124 & Ex. Z at 5, 8–10) (emphasis added).

### B.    Procedural Background

On March 30, 2021, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court, initiating the Bankruptcy Case. [Dkt. No. 1]. As of the date of the Debtor's bankruptcy filing, the Debtor owed Bay Point $2,961,388.89 plus legal fees, costs, expenses, and other amounts owing and under the Loan Documents, applicable law and/or other amounts contained in the District Court Action (the **"Debt"**) (Compl. ¶ 121; District Court Action, Amended Verified Compl. [Dkt. No. 31] ¶ 163 & Counts I-X).

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

The Debtor's and the Hoplite Entities' bankruptcy filings resulted in a stay of the District Court Action.   As a result, in order to prevent the Debt from being discharged, on June 25, 2021, Bay Point filed the Non-Dischargeability Complaint.   [Adv. Dkt. No. 1].   It includes just one count, seeking a determination that the Debt resulting from the Debtor's intentional fraud is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

Pursuant to the Summons on the Non-Dischargeability Complaint issued by this Court and served on the Debtor by Bay Point in accordance with Fed. R. Bankr. P. 7004 and LBR 7004-1(b), the Debtor's response to the Non-Dischargeability Complaint was due on July 28, 2021. [Adv. Dkt. Nos. 2 & 3].   But the Debtor did not file a response by the deadline.   [*See generally* Adv. Dkt.].   So, almost a month later on August 27, 2021, Bay Point filed a Request for Clerk to Enter Default Under Local Bankruptcy Rule 7055-1(a) against the Debtor as to the Non-Dischargeability Complaint (the "**Request for Entry of Default**").   [Adv. Dkt. No. 5].   That same day, Bay Point served the Request for Entry of Default on the Debtor, by causing it to be mailed to the address provided by the Debtor in his Bankruptcy Case.   [Adv. Dkt. No. 5-1; Dkt. No. 2:21-bk-12542-BR]; *see* FRBP 7004 (providing that service in adversary proceedings may be made in the United States by first class mail); *In re Zamora*, No. 2:17-BK-22698-BB, 2020 WL 1272257, at *2 (Bankr. C.D. Cal. Mar. 16, 2020) ("The Court is entitled to presume that the address that Appellant himself provides as his mailing address is a valid mailing address for him.").   Bay Point also mailed, and emailed, the Request for Entry of Default to the Debtor's counsel of record in the Bankruptcy Case.   [Adv. Dkt. No. 5-1].   Bay Point included the Debtor on the email to the Debtor's bankruptcy counsel.   *See* Winsberg Decl., ¶ 14.

On September 4, 2021, Bay Point's mailing to the Debtor of the Request for Entry of Default was returned to sender as undelivered; as of the date of this filing, however, the copies of the Request for Entry of Default that Bay Point served on the Debtor's bankruptcy attorney have not been returned.   *See* Winsberg Decl., ¶¶ 15-16.   Nor have the Summons and Non-Dischargeability Complaint, served by Bay Point on the Debtor at the same address, been returned to sender.   *See* [Adv. Dkt. No. 5. at 3–4, ¶¶ 6–7]; *In re Brack*, No. 10-26347-D-7, 2016 WL 5793655, at *4 (Bankr. E.D. Cal. Sept. 30, 2016) (granting unopposed motion for default

- 12 -

1  judgment where summons and complaint were properly served under FRBP 7004, making it

2  "unlikely that Defendant's failure to respond to the complaint was due to excusable neglect"); *see*

3  *generally In re Cossio*, 163 B.R. 150 (B.A.P. 9th Cir. 1994), *aff'd*, 56 F.3d 70 (9th Cir. 1995).

4        Thus, Bay Point having done all that is required to obtain entry of default, *see* LBR 7055-

5  1(a), the Clerk entered default against the Debtor on August 29, 2021 and notified the Debtor.

6  [Adv. Dkt. Nos. 6-7].  This Motion for entry of default judgment now follows.

7  **III.    ARGUMENT**

8        **A.    <u>Legal Standard Governing the Entry of Default Judgments</u>**

9        Federal Rule of Civil Procedure 55, made applicable to this Adversary Action through

10  Federal Rule of Bankruptcy Procedure 7055 and Local Bankruptcy Rule 7055-1, governs default

11  judgments.  *In re McGee*, 359 B.R. 764, 770 (B.A.P. 9th Cir. 2006).  Upon entry of default, the

12  Court is to take as true the well-pleaded allegations of the complaint relating to a defendant's

13  liability.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  "[T]he

14  default itself," therefore, ordinarily "establishe[s] the defendant's liability."  *Myers v. LHR, Inc.*,

15  543 F. Supp. 2d 1215, 1217 (S.D. Cal. 2008).  Moreover, following the entry of default, a

16  defendant is legally precluded from disputing liability and is also barred from asserting any

17  affirmative defenses.  *See In re Estate of Marcos Human Rights Litig.*, 978 F.2d 493, 495 n.2 (9th

18  Cir. 1992); *In re Manning*, No. ADV 6:12-1149, 2013 WL 4428761, at *6 (B.A.P. 9th Cir. Aug.

19  19, 2013).

20        Upon proof of a prima facie case of a non-dischargeable debt, bankruptcy courts routinely

21  enter non-dischargeable default judgments against defaulted debtors.  *See In re Kennedy, No.*

22  *ADV.08-00537-GBN*, 2011 WL 1098463, at *5–6 (B.A.P. 9th Cir. Mar. 9, 2010) (affirming entry

23  of default judgment for non-dischargeable debt under 11 U.S.C. § 523); *In re Mohammed*, No.

24  2:20-AP-01168-ER, 2021 WL 2373632, at *4 (Bankr. C.D. Cal. June 9, 2021) (entering default

25  judgment on a § 523(a)(2)(A) claim).[3]  As detailed below, and as apparent from the well-pleaded

26  ─────────────────

27  [3] *See also, e.g.*, *In re Urbina*, 519 B.R. 694, 698–99 (Bankr. N.D. Ohio 2014) (granting motion for entry of
non-dischargeable default judgment where "the straightforward and well-pleaded averments of Plaintiff's
Complaint constitute[d] a valid cause of action under § 523(a)(2) and 523(a)(6)."); *In re Johnson*, 313

28  B.R. 119, 134 (Bankr. E.D.N.Y. 2004) (granting motion for entry of non-dischargeable default judgment

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1    allegations of the Non-Dischargeability Complaint and its exhibits, Bay Point has adduced more

2    than sufficient evidence establishing the elements of a non-dischargeable debt owed by the

3    Debtor to Bay Point traceable to the Debtor's intentional fraud.

4    **B.    Bay Point is Entitled to Default Judgment on its Non-Dischargeability Claim.**

5        The Court should enter default judgment on Bay Point's Non-Dischargeability Claim

6    because Bay Point has obtained entry of Default against the Debtor, [*see* Adv. Dkt. No. 6], and

7    the well-pleaded allegations in Bay Point's Non-Dischargeability Complaint establish a valid

8    cause of action under Section 523(a)(2)(A).  "The Bankruptcy Code has long prohibited debtors

9    from discharging liabilities on account of their fraud, embodying a basic policy animating the

10   Code of affording relief only to an 'honest but unfortunate debtor.'"  *Cohen v. De La Cruz*, 523

11   U.S. 213, 217 (1998).  "Section 523(a)(2)(A) continues the tradition, excepting from discharge

12   'any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to

13   the extent obtained by . . . false pretenses, a false representation, or actual fraud.'"  *Id.* at 218.

14       Under Section 523(a)(2)(A), the following elements are required to establish that a debt is

15   non-dischargeable: "(1) misrepresentation, fraudulent omission or deceptive conduct by the

16   debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to

17   deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5)

18   damage to the creditor proximately caused by its reliance on the debtor's statement or conduct."

19   *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000).

20       The well-pleaded factual allegations in Bay Point's Non-Dischargeability Complaint—

21   confirmed by the District Court's findings and the Debtor's Plea Agreement—satisfy all of

22   Section 523(a)(2)(A)'s requirements.  First, to induce Bay Point to make the $2 million Loan, the

23   Debtor repeatedly represented to Bay Point that the Hoplite Entities had more than $3.4 million in

24   short-term receivables that would be due and payable under three separate licensing agreements

25

26   where "the undisputed allegations of the Complaint, the reasonable inferences that they support, and the
     record before the Court make out a *prima facie* case that the Defendant knowingly made false
27   representations as to her intent to repay, with the intent to deceive Citibank," and that "Citibank justifiably
     relied on the Defendant's false representations, and suffered a loss that was proximately caused by those
28   false representations.").

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1    prior to the Loan's maturity date.  (Compl. ¶¶ 9, 11–14).  These representations, and at least two

2    of the underlying agreements provided by the Debtor as support, were false, as confirmed by

3    representatives from Screen Media Ventures and Big Media Holdings and later admitted by the

4    Debtor.  (*Id.* ¶¶ 74–78, Ex. Z at 9).  The Debtor also fabricated subordination and standby

5    agreements from various creditors, as well as non-disturbance agreements from Big Media

6    Holdings and Screen Media Ventures, which were required by Bay Point, in an effort to feign

7    satisfaction of Loan's condition precedent that Bay Point be given "a valid, first priority perfected

8    security interest in the presently-existing Collateral."  (*Id.* ¶¶ 81–84, 95–99, Ex. G, §§ 3.1(a), 4.1,

9    Ex. Z at 9).

10          Second, the Debtor has admitted that he knew his representations regarding the

11    receivables and subordination and standby agreements were false and that he fabricated

12    documents.  (*Id.* Ex. Z at 9; *see also id.* ¶¶ 74-96, 103-114, 122-127 & Exs. T, U & Y).  Third, the

13    Debtor engaged in this fraudulent scheme to obtain the Loan from Bay Point.  (*Id.* Ex. Z at 9; *see*

14    *also id.* ¶¶ 56, 58, 78, 84, 95-96, 134–36).  The Debtor's fraudulent intent is supported by his

15    failure to make a single payment under the Loan Agreement, as well as his subsequent efforts to

16    conceal his fraud by refusing to produce monthly financial statements and sending false records

17    of electronic bank transfers to look as though payments were coming, so that Bay Point would

18    forbear from foreclosing on the Loan.  (*Id.* ¶¶ 40–44, 55, 58–68, 70–73).  This compelling

19    evidence is more than sufficient to establish fraudulent intent on the Debtor's part.  *See In re*

20    *Barrack*, 217 B.R. 598, 607 (B.A.P. 9th Cir. 1998) ("Fraudulent intent may be established by

21    circumstantial evidence, or by inferences drawn from a course of conduct.") (citation omitted); *In*

22    *re Heckenkamp*, 110 B.R. 1, 2–3, 5 (Bankr. C.D. Cal. 1989) (Russell, J.) (holding that false

23    representations from debtor about repaying loan in 2 weeks, his available funds, and check

24    purporting to satisfy the debt from an account with insufficient funds satisfied plaintiff's burden

25    and established that debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A)).  But were

26    there still any doubt, the Debtor has admitted that he "acted with the intent to defraud" Bay Point

27    in his Plea Agreement.  (Compl. ¶¶ 122–27 & Ex. Z).

28          Fourth, Bay Point justifiability relied on each of the Debtor's misrepresentations in

- 15 -

1  deciding to make the Loan.  Indeed, the Debtor made many of the false representations to satisfy

2  requirements for Bay Point to make the Loan in the first place, and Bay Point would not have

3  made the Loan without them.  (*E.g.*, *id.* ¶¶ 26–39 & Exs. G, I).  And finally, as a direct and

4  proximate cause of the Debtor's fraud, Bay Point made the $2 million Loan, which was

5  personally guaranteed by the Debtor and has not been repaid, resulting in injury to Bay Point.

6  (*Id.*, Ex. Z).  Bay Point has also incurred additional costs and fees in connection with the

7  prosecution of the Debtor's fraud.  Accordingly, the Court should enter a default judgment that

8  the Debt owed to Bay Point is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

9  **C.**  **The Court Should Determine the Non-dischargeability of Smith's Debt Under**

10  **§ 523(a)(2)(A) to be $3,541,335.87.**

11  If the Court enters a judgment that the Debt owed to Bay Point is not dischargeable under

12  11 U.S.C. § 523(a)(2)(A), it should also determine the amount of the Debtor's liability.  *See In re*

13  *Mohammed*, 2021 WL 2373632, at *4–5 (entering default judgment on plaintiff's non-

14  dischargeability claim for specified amount).  Indeed, "a debt is defined in the [Bankruptcy] Code

15  as 'liability on a claim,' and a 'claim' is defined in turn as a 'right to payment,'" which is

16  "nothing more nor less than an enforceable obligation."  *Cohen*, 523 U.S. at 218; *see also* 11

17  U.S.C. § 101(5) & (12).  Here, the Debtor's liability on Bay Point's non-dischargeability claim

18  under 11 U.S.C. § 523(a)(2)(A) is $3,541,335.87.

19  **1.**  **Bay Point is Entitled to Recover $3,176,944.44 in Principal, Interest**

20  **and Late Fees Owing Under the Loan Documents.**

21  As described above, because of the Debtor's fraudulent scheme, Bay Point loaned $2

22  million to the Hoplite Entities, which the Debtor expressly guaranteed.  (*See* Compl., Exs. G & I).

23  Neither the Hoplite Entities, nor the Debtor have made any payment under the Loan.  (Compl.

24  ¶ 55).  The Debtor, as guarantor of the Loan, is therefore liable to Bay Point for the full $2

25  million principal of the Loan.  (*See* Compl., Exs. G, I, J & K).

26  The Debtor's Debt to Bay Point, however, also includes unpaid interest and late fees.  "An

27  award of prejudgment interest in a § 523 proceeding in which a creditor prevails ensures the

28  creditor is made whole and has a full recovery."  *In re Hurtado*, 2015 WL 2399665, at *10

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

(Bankr. E.D. Cal. May 18, 2015) (citing *Cohen*, 523 U.S. at 222–23).  Thus, in determining the existence and non-dischargeability of a debt, bankruptcy courts have broad discretion to award prejudgment interest.  *See id.*; *see also In re Cottle*, No. 2:09-BK-28307-GBN, 2016 WL 6081030, at \*4 (B.A.P. 9th Cir. Oct. 17, 2016); *In re Sun*, 535 B.R. 358, 370 (B.A.P. 10th Cir. 2015).  A bankruptcy court's determination of the existence and amount of the underlying debt, including prejudgment interest, is an issue governed by state law.  *In re Sun*, 535 B.R. at 372; *In re Hurtado*, 2015 WL 2399665, at \*10 ("State law governs the applicable interest rate.").  Interest runs from the date of the default and is calculated through the date of judgment.  *In re Hurtado*, 2015 WL 2399665, at \*11 (collecting cases); *see In re Hostetter*, 320 B.R. 674, 687 (Bankr. N.D. Ind. 2005) (granting default judgment on § 523(a)(2)(A) claim and awarding prejudgment interest to the date of entry of the judgment); *see also, e.g.*, *In re Cottle*, 2016 WL 6081030, at \*5–6; *In re Del Valle*, 577 B.R. 789, 810–11 (Bankr. C.D. Cal. 2017); *In re Sun*, 535 B.R. at 370–73; *In re Rifai*, 604 B.R. 277, 332 (Bankr. S.D. Tex. 2019).  Post-judgment interest accrues following entry of a judgment under federal law.  *In re Hurtado*, 2015 WL 2399665, at \*11 (citing 28 U.S.C. § 1961).

Under Nevada law,[4] prejudgment interest is awarded on judgments "for any debt, damages, or costs."  *See* Nev. Rev. Stat. § 17.130(1).  "[P]arties may specify in a contract the interest rate and terms to be applied," *Westgate Planet Hollywood Las Vegas, LLC v. Tutor-Saliba Corp.*, 133 Nev. 1092, 421 P.3d 280 (2017); Nev. Rev. Stat. § 99.050, "and courts will apply the interest rate agreed to," *Ishiyama v. Glines*, No. CV 16-07725-AB (ASX), 2018 WL 3815034, at \*4 (C.D. Cal. July 25, 2018) (awarding prejudgment interest at rate provided in guaranty governed by Nevada law); *see also PharMerica Mountain, LLC v. RCSRP Corp.*, No. 220CV00732JADEJY, 2021 WL 982314, at \*4 (D. Nev. Mar. 16, 2021) ("Nevada has long recognized that parties are free to agree to any rate of interest, and if they fix such rate in a written contract, it 'shall prevail in all cases.'") (quoting *McLane v. Abrams*, 2 Nev. 199, 205 (1866) (footnotes omitted).  Courts, in adversarial actions like this one, routinely award prejudgment

---

[4] The parties agreed in the Forbearance Agreements that they and the Loan Documents would be governed by Nevada law.  (Exs. J & K § 20).

- 17 -

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1    interest at the contracted rate. *In re Saccheri*, No. ADV 09-1273, 2012 WL 5359512, at *12

2    (B.A.P. 9th Cir. Nov. 1, 2012) (affirming court's use of "interest rate agreed to by the parties in

3    the promissory notes" to calculate prejudgment interest), *aff'd*, 599 F. App'x 687 (9th Cir. 2015);

4    *In re Rifai*, 604 B.R. at 332; *In re Matkins*, 605 B.R. 62, 111–15 (Bankr. E.D. Va. 2019)

5    (applying late fee and interest provision of parties' agreement).[5]

6        The Guaranty provides for the Debtor's "punctual payment and performance" of the Loan

7    and Loan Documents, (Ex. I § 1), which entitle Bay Point to "unpaid principal" of $2 million and

8    "interest on th[at] unpaid principal" at a fixed rate of 5% per month until full satisfaction of the

9    debt (regular interest) (Ex. G §§ 2.1, 2.3, 2.4).  Regular interest began accruing upon delivery of

10   the Loan on September 30, 2020 and accrued on outstanding principal of $2,000,000.  *See*

11   Declaration of Kevin Brawner ("**Brawner Decl.**"), ¶ 12 (attached hereto as **Exhibit 2**).  Since

12   then, and through the Debtor's filing for bankruptcy on March 30, 2021, $600,000 in regular

13   interest accrued on the unpaid principal.  *See id.*

14       Since the Debtor defaulted under the Guaranty by failing to pay interest payments due on

15   October 31, 2020 and thereafter, the Debtor also accrued $131,388.89 in default interest through

16   March 30, 2021, which accrued at a rate of 5% per annum from November 4, 2020 to December

17   12, 2020, and which continued to accrue at a rate of 20% per annum from December 12, 2020 to

18   March 30, 2021. *See id.*, ¶¶ 13-15; (Compl. ¶¶ 51-52 & Ex. K §§ H, I).

19       Furthermore, the Loan Documents entitled Bay Point to charge interest of 20% per annum

20   on the outstanding unpaid principal of $2,000,000 from March 31, 2021 through October 19,

21   2021.  *See* Brawner Decl., ¶ 16.  From March 31, 2021 to October 19, 2021, that post-bankruptcy

22

---

23   [5] *See also In re Morris*, No. 15-10860(1)(7), 2018 WL 1940382, at *3 (Bankr. W.D. Ky. Apr. 23, 2018)
     (rejecting contention that federal, post-judgment interest rate applies over rate agreed upon by the parties);
24   *In re Viles*, No. 08-41203-7, 2010 WL 299246, at *16 (Bankr. D. Kan. Jan. 19, 2010) (finding plaintiff
     "entitled to interest on its [successful § 523(a)(2)(A)] claim at the contract rate of interest up to the date of
25   judgment, and [] to interest from the date of judgment until paid at the rate set forth in 28 U.S.C. § 1961");
     *In re Cottle*, 2016 WL 6081030, at *5–6; *In re Piening*, No. A09-00278-DMD, 2010 WL 7785860, at *4
26   & n.29 (Bankr. D. Alaska Nov. 8, 2010) (awarding interest at the legal rate under contract providing for
     interest of "1.5% per month or the maximum allowed by law" because "[a] monthly rate of 1.5%" would
27   "exceed[] the maximum rate allowed under" state law); *cf. In re Salazar*, No. AP 17-02005, 2019 WL
     267777, at *15–16 (Bankr. D. Utah Jan. 18, 2019) (applying Utah's statutory interest rate only because
28   "the Note does not mention a rate of interest, and there was no evidence of an agreed interest rate").

1    interest will have accrued in the amount of $225,555.56.  *See id.*, ¶ 17.  Accordingly, as of

2    October 19, 2021, $956,944.44 in prejudgment interest will have accrued against the Debtor.  *See*

3    *id.* ¶ 18.

4        Finally, the Loan Agreement required payment of a "late payment fee" equal to ten

5    percent of any late payment, including the outstanding principal balance of the Loan owed on the

6    maturity date or following acceleration.  (Compl., Ex. G § 2.8(c)).  As of March 30, 2021, the

7    Debtor owed Bay Point $220,000 in late fees.  (Compl., Ex. J. § I).  *See also* Brawner Decl., ¶ 19.

8        Accordingly, the Debtor's current indebtedness to Bay Point, less attorneys' fees and

9    costs, is $3,176,944.44.[6]   The Court should exercise its broad discretion to award prejudgment

10   interest and late fees to Bay Point.  *In re Brown*, No. ADV 08A00936, 2009 WL 2461241, at *1–

11   2, 9 (Bankr. N.D. Ill. Aug. 11, 2009) (including late fees and prejudgment interest in calculation

12   of non-dischargeable debt incurred on short-term bridge loan); *In re Hurtado*, 2015 WL 2399665,

13   at *11 (awarding prejudgment interest based on interest accrued from date of default through date

14   of judgment); *cf. In re Sun*, 535 B.R. at 373 (holding that bankruptcy court erred in awarding

15   prejudgment interest on entire damage award through date of the judgment because debtor had

16   repaid a portion of the damages prior to judgment).

17       **2.    Bay Point is Also Entitled to Its Reasonable Attorneys' Fees and Costs**

18       **Under the Guaranty and Forbearance Agreements.**

19       In addition to principal, interest and fees owed to Bay Point, pursuant to the Guaranty and

20   Forbearance Agreements, the Debtor is also liable for the attorneys' fees Bay Point incurred as a

21   result of the Debtor's intentional fraud.  In *Cohen v. de la Cruz*, 523 U.S. 213 (1998), the

22   Supreme Court made clear that, for purposes of determining non-dischargeable debt under §

23   523(a)(2)(A), "once it has been established that specific money or property has been obtained by

24   fraud, . . . 'any debt' arising therefrom is excepted from discharge."  *Id.* at 218.  Accordingly, §

25   523(a)(2)(A) encompasses all liability arising from a debtor's fraudulent conduct, including

26

27   _____

28   [6] In both the first and second Forbearance Agreements, the Debtor agreed that his outstanding indebtedness to Bay Point under the Loan Documents included regular interest, default interest, and late fees, as well as Bay Point's legal costs.  (*See* Exs. J § I, K § I).

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

attorneys' fees and costs to which the creditors are otherwise entitled. *Id.*; *In re Davis*, 595 B.R. 818, 827 (Bankr. C.D. Cal. 2019). The "determinative question" for awarding attorneys' fees and costs is therefore "whether the creditor would be able to recover the fee outside of bankruptcy under state or federal law." *In re Davis*, 595 B.R. at 827 (quoting *In re Hung Tan Pham*, 250 B.R. 93, 99 (9th Cir. BAP 2000)). Put more precisely, the question is whether the creditor would be entitled to recover fees and costs in state court for establishing the elements of the claim upon which the bankruptcy court finds the debt is not dischargeable. *See In re Dinan*, 448 B.R. 775, 785 (B.A.P. 9th Cir. 2011). In a dischargeability action based on § 523(a)(2)(A), that means the creditor must be entitled to recover attorneys' fees and costs for claims of fraud under the applicable state law. *See id.*; *In re Jaques*, 615 B.R. 608, 643 (Bankr. D. Idaho 2020) (fees awarded under applicable state law).

Attorneys' fees are available, under Nevada law, "when authorized by a rule, statute, or contract." *Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 110 Nev. 984, 991 (1994) (quotation omitted). Nevada Revised Statute § 18.010(1), in turn, provides that compensation for legal "services is governed by agreement, express or implied, which is not restrained by law." A prevailing party is entitled to recover its fees under this provision when the contract between the parties allows it. *See* Nev. Rev. Stat. § 18.010(4); *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1097–98 (1995).

> a.    **The Relevant Contract Provisions Encompass Bay Point's Section 523(a)(2)(A) Claim Against the Debtor.**

The unambiguous language of the Forbearance Agreements encompasses claims based on the intentional fraud perpetrated by the Debtor and established by Bay Point's well pleaded allegations here. In Nevada, "[p]arties are free to provide for attorney fees by express contractual provisions." *Davis v. Beling*, 128 Nev. 301, 321 (2012). To determine whether an attorneys' fee provision is sufficiently broad to encompass tort claims like fraud, courts employ the ordinary rules of contract construction. *Dobron v. Bunch*, 125 Nev. 460, 464 (2009); *Robert Dillon Framing, Inc. v. Canyon Villas Apartment Corp.*, 129 Nev. 1102 (2013). Like other contracts, "[t]he objective . . . is to discern the intent of the contracting parties." *Davis*, 128 Nev. at 321.

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1  That objective puts the "initial focus" on whether the terms of the attorneys' fees provision are

2  "clear and unambiguous;" if they are, "the contract will be enforced as written." *Id.*; *Pardee*

3  *Homes of Nevada v. Wolfram*, 135 Nev. 173, 178 (2019); *ParksA Am., Inc. v. Harper*, 132 Nev.

4  1015 (2016).

5      The two Forbearance Agreements executed by the Debtor contain identical provisions

6  providing for the recovery of Bay Point's costs:

7    <u>**Attorneys' Fees**</u>: Obligors ***are and shall remain liable*** to Lender for Lender's
   expenses and costs ***incurred in the enforcement of Lender's rights under the***
8  ***Loan Documents <u>or applicable law</u>***, including, without limitation, reasonable
   attorneys' fees, without further notice to Obligors and without any further action
9  on the part of Lender.

10 (Compl., Ex. J, § 8 (emphasis added); Compl., Ex. K, § 8 (emphasis added)).

11     On its face, this provision contemplates and requires an award of attorneys' fees and costs

12 on successful tort claims, in addition to contract claims premised on the Loan Documents.

13 Indeed, the Supreme Court of Nevada analyzed comparable language in *Robert Dillon Framing*,

14 129 Nev. at 1102.  That contract allowed recovery of fees and costs "growing out of or caused by

15 the Agreement or performance hereunder." *Id.*  The court found the contractual language was

16 broad enough to afford the prevailing party the "right to recover all reasonable fees that it

17 incurred in litigating th[e] dispute []—regardless of whether the underlying cause of action

18 sounded in tort or contract." *Id.*

19     Similarly, Section 8 of the Forbearance Agreement does not limit Bay Point's recovery of

20 costs and attorneys' fees to actions to enforce the Loan Documents, but rather broadly

21 encompasses any other claim through which Bay Point seeks to "enforce[]" its "rights under . . .

22 applicable law[.]"  (Compl., Ex. J, § 8; Compl., Ex. K, § 8).  This "applicable law" phrase—

23 contemplating *all* legal (i.e., extra-contractual) rights—would be superfluous, as well as

24 duplicative of the language preceding it, if Section 8 were limited to contract claims brought only

25 to enforce the terms of the Loan Documents themselves.  *See Musser v. Bank of Am.*, 114 Nev.

26 945, 949 (1998) ("[E]very word must be given effect if at all possible" when interpretating a

27 contract," and courts should avoid an interpretation "that make[s] meaningless its provisions.")

28 (citations omitted).  Accordingly, a straightforward reading of Section 8 encompasses two species

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1  of claims, arising from two categories of rights: (1) those flowing from the parties' agreements,

2  "*or*" (2) those arising by operation of law, neither contemplated in, nor foreclosed by, the

3  contracts' terms.  Included in the latter are common law tort claims, like fraud.  *See In re Martin*,

4  No. 2:17-BK-16996-ER, 2019 WL 3025248, at *13 (Bankr. C.D. Cal. July 10, 2019)

5  (substantially similar clause in prevailing-party provision of note providing "for the recovery of

6  fees incurred in connection with '*the protection or preservation of any rights of the holder*

7  *hereunder*" held "sufficiently broad to encompass [] dischargeability action"; such language,

8  court held, "is similar to provisions allowing recovery for fees incurred with respect to suits

9  arising from or with respect to the subject matter of a contract," which "provisions have been held

10  to extend to tort claims") (emphasis added), *aff'd*, 2021 WL 825142 (B.A.P. 9th Cir. Mar. 3,

11  2021); *In re Tran*, 301 B.R. 576, 583–85 (Bankr. N.D. Cal. 2003) (interpreting fees provision that

12  applied "[i]n the event it becomes necessary for [plaintiff] to incur collection costs or institute suit

13  to collect any amount due under the agreement or any portion thereof" as authorizing plaintiff "to

14  recover its attorneys' fees for litigating a dischargeability claim to collect a debt").

15      Because Bay Point would be entitled to recover attorneys' fees under Nevada law for

16  establishing a claim of fraud—the same elements of the nondischargeability claim under §

17  523(a)(2)(A)— the Court should award Bay Point its attorneys' fees and costs as part of the

18  Debtor's non-dischargeable Debt.

19          **b.      Bay Point Is Entitled to Recover $364,391.43 in Attorneys' Fees**

20                  **and Costs.**

21      To prosecute the Debtor's fraud in the District Court Action, Bay Point incurred

22  $364,391.43 in attorneys' fees and costs through March 30, 2021.[7]  Indeed, after the Debtor

23  defaulted and duped Bay Point into forbearing on its recovery rights, Bay Point initiated the

24  District Court Action on January 22, 2021.  Bay Point asserted claims for fraud, breach of

25  contract, and RICO.  (Compl. ¶¶ 101).  Bay Point's outside counsel prepared a voluminous

26

27  [7] State law also governs the calculation of fees recoverable in a non-dischargeability action.  *In re Dinan*,
448 B.R. at 785–88.  "The method for determining reasonable attorney's fees in Nevada is not limited to
one specific approach," *id.* at 778; a court may use "any method rationally designed to calculate a

28  reasonable amount," *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548–49 (Nev. 2005).

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1   complaint documenting the Debtor's fraudulent scheme, as well as an amended complaint to

2   reflect additional fraudulent conduct uncovered by Bay Point during the proceedings.   *See*

3   Winsberg Decl., ¶ 9; *see also* Declaration of John Isbell ("**Isbell Decl.**"), ¶ 6 (attached hereto as

4   **Exhibit 3**).   The Debtor sought dismissal.   Winsberg Decl. ¶ 9.   Bay Point also sought the

5   emergency appointment of a receiver to thwart further fraudulent conduct by Debtor, which the

6   Debtor opposed.   *Id.* at Ex. B.   The Court held three separate evidentiary hearings on Bay Point's

7   motion and entered the Injunction Order and later the Receivership Order, which required the

8   review of substantial documentary evidence from the Debtor and Bay Point's taking of the

9   Debtor's deposition.   *Id.* ¶ 9, Ex. B.   As reflected in, and confirmed by, nearly 50 separate entries

10  on the District Court Action docket, prosecution of the Debtor's fraud in the District Court Action

11  required substantial time and resources by Bay Point's outside counsel.   *Id.* ¶¶ 9, 12, Ex. B.

12  Those fees are set forth in detail in the supporting declarations of Harris Winsberg and John

13  Isbell.   *See* Exs. 1 and 3.

14       Bay Point also retained Marshall Glade to serve as Bay Point's designee under the

15  Injunction Order, to provide testimony as to the Debtor's compliance with the Injunction Order,

16  and to serve as the proposed receiver.   *See* Declaration of Marshall Glade ("**Glade Decl.**"), ¶ 5

17  (attached hereto as **Exhibit 4**); Compl. ¶¶ 113-118, Ex. U §§ 2-6, 9-11.   Mr. Glade's fees and

18  expenses are set forth in detail in his supporting declaration.[8]   *See* Ex. 4.

19       It is therefore just and equitable to award as part of the non-dischargeable judgment, the

20  fees and costs Bay Point has incurred in connection with the District Court Action.   In the

21  alternative, if the Court does not find the amount of the non-dischargeable debt to be equal to the

22  figures set forth herein and in the attached supporting declarations, Bay Point respectfully

23  requests that the Court treble Bay Point's $2.0 million principal loss under RICO or award

24

---

25  [8] Bay Point is also entitled to the recovery of Mr. Glade's fees and expenses under the Loan Agreement
    and Forbearance Agreements.   (Compl. ¶¶ 22-24, 47-51, Exs. G § 11.4 (allowing for the recovery of "all

26  reasonable and documented out-of-pocket costs and expenses incurred by Lender after an Event of Default
    in connection with the collection of the Obligations or the enforcement of this Agreement, the other Loan

27  Documents or any such other documents or during any workout, restructuring or negotiations in respect
    thereof."), J-K § 8 ("Obligors are and shall remain liable to Lender for Lender's expenses and costs in the

28  enforcement of Lender's rights under the Loan Documents or applicable law . . . .").

punitive damages under Nev. Rev. Stat. 42.005 based on the Debtor's egregious fraudulent conduct.  (Compl. ¶ 121; District Court Action Amended Verified Complaint Counts I-II, VII). Indeed, under *Cohen*, § 523(a)(2)(A) excepts from discharge ***all*** of the Debtor's liability arising from his fraud, which includes treble damages and punitive damages recoverable on account of the fraud.  *See* 523 U.S. at 223; *see also, e.g.*, *In re St. Laurent*, 991 F.2d 672 (11th Cir. 1993) ("Punitive damage awards flowing from the same course of conduct necessitating an award of compensatory damages are not dischargeable in bankruptcy under [Section] 523(a)(2)(A).").

## IV.    CONCLUSION

For these reasons, the Court should grant Bay Point's motion, and enter a default judgment against the Debtor finding that the Debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

TROUTMAN PEPPER HAMILTON SANDERS LLP
TWO CALIFORNIA PLAZA
350 SOUTH GRAND AVENUE
SUITE 3400
LOS ANGELES, CA 90071-3427

1   Dated:      September 15, 2021          TROUTMAN PEPPER HAMILTON
                                      SANDERS LLP

By: */s/ Nathaniel DeLoatch*
    Luke N. Eaton (SBN 280387)
    Two California Plaza
    350 S. Grand Avenue, Suite 3400
    Los Angeles, CA 90071-3427
    Telephone: 213.928.9800
    Facsimile: 213.928.9850
    luke.eaton@troutman.com

    -and-

    Harris B. Winsberg (admitted *pro hac vice*)
    Alexandra S. Peurach (admitted *pro hac vice*)
    Nathaniel T. DeLoatch (admitted *pro hac vice*)
    600 Peachtree Street, NE, Suite 3000
    Atlanta, GA 30308
    Telephone: 404.885.3000
    Facsimile: 404.885.3900
    harris.winsberg@troutman.com
    alexandra.peurach@troutman.com
    nathan.deloatch@troutman.com

*Attorneys for Creditor and Plaintiff Bay Point*
*Capital Partners II, LP.*

- 25 -